[No. B139140. Second Dist., Div. Seven. June 6, 2001.]

ROBIN HICKS et al., Plaintiffs and Appellants, v.
KAUFMAN AND BROAD HOME CORPORATION et al., Defendants,
Cross-complainants and Respondents;
SYNTHETIC INDUSTRIES, INC., Cross-defendant, Cross-complainant
and Respondent.

**COUNSEL**

Cohelan & Khoury, Timothy D. Cohelan, Isam C. Khoury, Michael D. Singer; Freeman & Freeman and Lawrence P. Freeman for Plaintiffs and Appellants.

Morrison & Foerster, Douglas M. Rawlings and Mark R. McDonald for Defendants, Cross-complainants and Respondents.

Heller Ehrman White & McAuliffe, Richard DeNatale, Michael T. Williams, Jilana L. Miller; Murchison & Cumming, Friedrich W. Seitz and Edmund G. Farrell III for Cross-defendant, Cross-complainant and Respondent.

**OPINION**

**JOHNSON, Acting P. J.**—Plaintiff homeowners appeal the denial of their motion for class certification in this action against a developer and general

contractor for the cost of repairing or replacing defective concrete foundations under their homes. We hold a class action may be maintained as to the claims for breach of express and implied warranty. Therefore, we reverse the trial court's order in part and remand the cause with directions.

FACTS AND PROCEEDINGS BELOW

Plaintiffs Hicks and Gonzales purchased and continue to own homes built and sold by defendant Kaufman and Broad Home Corporation and its subsidiaries (hereafter Kaufman). Plaintiffs allege the concrete slab foundations under their homes are "inherently defective" because Kaufman constructed them using Fibermesh, a polypropylene product, instead of welded wire mesh.

The parties agree Fibermesh does not *cause* concrete slab foundations to crack. Cracking is caused by loss of moisture as the concrete dries and by other occurrences such as soil erosion and seismic activity. It is also undisputed neither welded wire mesh nor Fibermesh will *prevent* cracks from occurring in a concrete slab foundation. Plaintiffs allege, however, welded wire mesh will restrict those cracks to a hairline width and thus maintain the integrity of the slab. Slabs built with Fibermesh, on the other hand, exhibit predominantly wider cracks which split the foundation into pieces and permit moisture, dirt and insects to intrude into the house, cause bumps in the flooring, and do not resist horizontal and vertical ground movement as well as slabs built with welded wire mesh. Plaintiff Hicks alleges, for example, her daughter's bedroom has become uninhabitable due to the dirt and insects entering through cracks in the foundation.

In their complaint, plaintiffs allege causes of action for strict liability, negligence and breach of express and implied warranty on behalf of themselves and all others similarly situated. The class is defined in relevant part as: "All persons or entities who own one or more homes [in specified Kaufman developments] which were constructed and marketed by [Kaufman] in which 'Fibermesh,' a polypropylene product, was utilized in the concrete foundation slabs as a substitute for 6x6, 10x10 welded wire mesh with manifested damage or defect due to the Fibermesh substitution." The complaint seeks "compensatory damages associated with the repair and/or replacement of the concrete foundations" of plaintiffs' and class members' homes. It does not seek compensation for plaintiffs or the class for personal

injury or property damage caused by the use of Fibermesh in the foundations.[1]

After Kaufman answered the complaint, plaintiffs moved for an order certifying the case as a class action.

The trial court denied class certification and dismissed the class allegations on two grounds: the members of the putative class were not reasonably ascertainable, and the causes of action lacked common issues of fact. Plaintiffs filed a timely appeal.

We concur in the trial court's ruling with respect to the tort causes of action because the elements of liability and causation cannot be established without individualized proof as to each of the purported 10,000 class members. We conclude, however, a manageable class action may be maintained as to the causes of action for breach of express and implied warranty because the class is ascertainable and common questions of law and fact predominate with only the amount of damages subject to individualized proof.

## DISCUSSION

### I. The Class Is Ascertainable with Respect to Each Cause of Action.

■ Our Supreme Court has held two requirements must be met to sustain a class action. "The first is existence of an ascertainable class, and the second is a well-defined community of interest in the questions of law and fact involved."[2] Although courts sometimes treat these two requirements as if they were one,[3] they are better examined separately because they serve separate purposes.

---

[1] Kaufman and Synthetic Industries, Inc. (SI), the manufacturer of Fibermesh, cross-complained against each other. SI joined Kaufman in opposing plaintiffs' motion for class certification and filed a respondent's brief in this appeal.

[2] *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964] (hereafter *Vasquez*).

[3] See, e.g., *Vasquez, supra,* 4 Cal.3d at page 809 ("As to the necessity for an ascertainable class, the right of each individual to recover may not be based on a separate set of facts applicable only to him)"; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732] (hereafter *Daar*) ("[W]hether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved"). In *Daar,* the court acknowledged "[a]pplicable precedents indicate that in observing the ascertainable class requirement they are at the same time giving recognition to the principle that a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action." (67 Cal.2d at p. 704.)

Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata.[4] Common questions of law and fact are required in order to assure the interests of the litigants and the court are furthered by permitting the suit to proceed as a class action "rather than in a multiplicity of separate suits."[5]

In the present case, the trial court concluded "class membership under any of plaintiffs' causes of action [cannot] be ascertained without an individualized analysis of each putative class member's concrete slabs [because] manifest damage to a slab must exist as a precondition for class membership."

■ The trial court applied an improper criterion in determining ascertainability of the class. Manifest damage to a slab is not a "precondition" for class membership. It is, if anything, an element in the proof of Kaufman's liability and relates to the existence of common questions of law and fact, not ascertainability of the class.[6] The court's reasoning is circular because it makes ascertainability depend on the outcome of the litigation on the merits.[7] Our Supreme Court has held, however, courts may not consider the merits of the claim at the certification stage.[8]

*Block v. Major League Baseball* illustrates the difference between ascertainability and commonality for purposes of class certification.[9] Block and four other former major league players brought a class action suit alleging defendants had violated their statutory and common law right of publicity by using their names, voices, signatures and photographs in various commercial products without consent or compensation. The class was defined as " 'all

[4]*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] (hereafter *City of San Jose*); *Daar, supra,* 67 Cal.2d at pages 704, 706; and see Cohelan on California Class Actions (1997) section 2.02, pages 2-2 to 2-3.

[5]*Daar, supra,* 67 Cal.2d at page 713; and see *City of San Jose, supra,* 12 Cal.3d at page 460 ("Before the imposition of a judgment binding on absent parties can be justified, it must be shown that substantial benefits both to the litigants and to the court will result").

[6]See discussion *post,* parts II and III.

[7]See *Hagen v. City of Winnemucca* (D.Nev. 1985) 108 F.R.D. 61, 63 (hereafter *Hagen*) in which the court declined to certify a class which would "consist of all persons whose constitutional rights have been violated by the City policies regarding prostitution in the four years before the complaint was filed." The court held the class definition "insufficient, in that it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member." The court concluded, however, it could modify the definition to make the class ascertainable. (*Id.* at p. 64 [see discussion, *post*].) See also 2 Newberg on Class Actions (3d ed. 1992) section 6.14, page 6-61.

[8]*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 443 [97 Cal.Rptr.2d 179, 2 P.3d 27].

[9]*Block v. Major League Baseball* (1998) 65 Cal.App.4th 538 [76 Cal.Rptr.2d 567] (hereafter *Block*).

major league baseball players who played major league baseball before 1947, or, if they are now deceased, their heirs or beneficiaries.' "[10] The appellate court held the complaint defined "an ascertainable class, i.e., approximately 800 men (or their heirs and beneficiaries) who played major league baseball prior to 1947"[11] but affirmed denial of class certification "given the numerous complex issues the trial court would be required to evaluate for each member of the class if the action were certified."[12] The court found the class *ascertainable* even though it was not defined as former major league players whose voices, likenesses, etc., defendants used without their "consent or compensation." Rather, the court properly treated the lack of consent or compensation as an ultimate fact each class member would have to prove to establish liability.

As explained in the leading treatise on class actions, ascertainability can be better achieved by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary. The class certification order and notice to the class are the proper places to explain the relationship between the defined class and the legal claims being made in the case.[13]

In the present case the complaint defined the class as homeowners whose homes contained Fibermesh foundations "with manifested damage or defect due to the Fibermesh substitution . . . ." This definition is flawed for the reasons stated above, but the flaw is not fatal. A class is still ascertainable even if the definition pleads ultimate facts or conclusions of law. For example, in *Wilner v. Sunset Life Ins. Co*[14] the class was defined as persons who owned policies issued by defendant " 'which were purchased as a result of deceptive or fraudulent sales practices described herein . . . and were thereby harmed.' " The court held this definition "describes the class sufficiently to make it ascertainable."[15] In *Slaven v. BP America, Inc.,*[16] an oil spill case, the court certified a class defined as persons having an interest in real or personal property " 'who have suffered or will suffer economic

---

[10]*Block, supra*, 65 Cal.App.4th at page 541.
[11]*Block, supra*, 65 Cal.App.4th at page 542. The class members presumably could be identified from league records.
[12]*Block, supra*, 65 Cal.App.4th at page 545.
[13]2 Newberg on Class Actions, *supra*, section 6.14, page 6-61.
[14]*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 960 [93 Cal.Rptr.2d 413] (hereafter *Wilner*).
[15]*Wilner, supra*, 78 Cal.App.4th at page 960.
[16]*Slaven v. BP America, Inc.* (C.D.Cal. 2000) 190 F.R.D. 649 (hereafter *Slaven*).

damage as a result of the oil spill and/or the ensuing clean-up effort.' "[17] Furthermore, if necessary to preserve the case as a class action, the court itself can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable.[18]

The class in the case before us is ascertainable. It consists of the owners of homes in specified developments constructed and marketed by Kaufman in which Fibermesh was utilized in the concrete foundation slabs. As such, the class is precise, objective, and can be determined from public records and Kaufman's own records, at least with respect to the California Marquis development.[19]

We conclude, therefore, an ascertainable class exists with respect to all of the causes of action in the complaint.

II. *Common Questions of Law and Fact Predominate with Respect to the Causes of Action for Breach of Warranty.*

■ A class may be certified when common questions of law and fact predominate over individualized questions.[20] As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.[21] In order to determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.[22]

■ Here, the trial court denied certification on the ground "common factual issues do not predominate." The court concluded plaintiffs failed to present "any evidence of common manifest damage" and "neither liability nor causation can be established without individualized analysis of each putative class member's concrete slabs[.]" Again, the court applied improper criteria.

---

[17]*Slaven, supra*, 190 F.R.D. at pages 650-651.

[18]*Woosley v. State of California* (1992) 3 Cal.4th 758, 795 [13 Cal.Rptr.2d 30, 838 P.2d 758]; and see *Hagen, supra*, 108 F.R.D. at page 64.

[19]See *Occidental Land Inc. v. Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750]; *Vasquez, supra*, 4 Cal.3d at page 811; *Daar, supra*, 67 Cal.2d at page 714; *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1275 [242 Cal.Rptr. 339] (hereafter *Reyes.*) If homes with Fibermesh foundations in other developments cannot be determined from existing records, then the trial court should determine if there are other reasonable methods for determining the class or whether the class should be limited to homeowners in the California Marquis development.

[20]*City of San Jose, supra*, 12 Cal.3d at page 460.

[21]*Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575].

[22]*Vasquez, supra*, 4 Cal.3d at pages 810-811.

Kaufman expressly warranted its homes "will be free from any defect resulting in or causing tangible damage to the . . . foundation of the home which materially diminishes the structural integrity and load-bearing performance of the home for a period of ten (10) years . . . ." California Uniform Commercial Code section 2314, subdivision (2)(c) establishes an implied warranty goods sold "[a]re fit for the ordinary purposes for which such goods are used" and section 2315 establishes an implied warranty "the goods shall be fit for [the] purpose" for which they are required.

Plaintiffs contend that to prove breach of the express and implied home warranties they only need to prove Fibermesh is an inherently defective product the use of which is substantially certain to lead to foundation failure. In support of their contention, plaintiffs submitted a declaration from their expert, Charles Laines. After reciting his qualifications and experience as a structural engineer Laines testified: "I have . . . inspected and investigated the performance of both wire mesh and Fibermesh in holding concrete together after it cracks. Without exception, the wire mesh has held cracks closely together and they rarely exceed hairline proportion. Fibermesh allows the cracks to separate, causing a loss of the interlock of the aggregate and in effect creating multiple slab pieces from what was to have been one slab. . . . [S]lab replacement is necessary to correct the problem, regardless of the condition of the slab at the present time. Whether any particular slab has actually yet cracked, and or the width of any particular crack at the present time, are not material factors. The fact that a slab has not yet cracked which would be rare—does not mean that environmental factors will not later cause a crack. If a crack has not yet separated, environmental factors will later likely cause separation."

Kaufman of course disputes Laines's expert opinion a concrete foundation containing Fibermesh is inherently defective because it will eventually fail. But even assuming Laines is correct, Kaufman contends, a cause of action for breach of warranty will not lie if the allegedly defective product is presently performing. Thus, in order to prove Kaufman breached its warranties, each class member would have to produce evidence his or her Fibermesh foundation has cracked or split in a way which would not have occurred if the foundation had been constructed using welded wire mesh. Producing this proof would require taking and analyzing core samples from the foundations of all class members' homes, which plaintiffs themselves allege number in the thousands.

The question before us is whether malfunction is an element of a cause of action for breach of warranty. California courts appear to have reached

contrary answers to this question. However, as we shall demonstrate, these cases are reconcilable. For the reasons we explain below, we conclude proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product. The question whether an inherently defective product is presently functioning as warranted goes to the remedy for the breach, not proof of the breach itself.

Plaintiffs rely on *Anthony v. General Motors*, a class action seeking replacement of defective truck wheels.[23] In *Anthony*, as in the case before us, the trial court ruled the plaintiffs' suit could not be maintained as a class action. The issue in *Anthony*, as in the case before us, was whether breach of the defendant's warranty could be established solely by evidence of a common inherent defect in the product.[24] The Court of Appeal concluded the existence of a common inherent defect was a question of fact common to the class which, if established, would support recovery on a breach of warranty theory. It was unnecessary to produce individualized evidence any plaintiff or class member had suffered wheel failure or personal injury or property damage as a result of wheel failure.[25]

In reaching its decision, the court in *Anthony* explained: "[T]he gravamen of plaintiffs' case is the contention that *all* wheels of the type involved contain an inherent defect which may cause them to fail at some time, even if loaded within the limits of the [defendant's] representations . . . and even if maintained and driven with due care. It is patent from the record before us that that issue is one which will require an elaborate and probably protracted trial. It is exactly the sort of common issue for which class actions are designed. [¶] . . . If, . . . as we read the record, plaintiffs are correct that *all* of the wheels are inherently suspect, the recovery expressly sought herein [repair/replacement of the wheels] will not turn on the conduct of any individual purchaser."[26]

Our Supreme Court's recent decision in *Aas v. Superior Court* also lends support to plaintiffs' argument the cost of repairing latent construction defects can be recovered under a breach of warranty theory without proof the defects have resulted in property damage.[27]

---

[23]*Anthony v. General Motors Corp.* (1973) 33 Cal.App.3d 699, 702, 704 [109 Cal.Rptr. 254] (hereafter *Anthony*).

[24]*Anthony, supra*, 33 Cal.App.3d at pages 702, 704-705.

[25]*Anthony, supra*, 33 Cal.App.3d at pages 704-705.

[26]*Anthony, supra*, 33 Cal.App.3d at pages 704-705 (italics in original).

[27]*Aas v. Superior Court* (2000) 24 Cal.4th 627 [101 Cal.Rptr.2d 718, 12 P.3d 1125] (hereafter *Aas*).

The plaintiffs in *Aas* were owners of single-family homes in a subdivision in San Diego County. The plaintiffs alleged their homes suffered from a variety of construction defects affecting virtually all components and aspects of their construction. They sued the developer and general contractor and many of the subcontractors asserting causes of action for negligence, strict liability, and breach of express and implied warranty. The plaintiffs sought, among other things, the cost of repairing the alleged defects.[28]

In pretrial proceedings, the defendants brought motions in limine applicable to all causes of action to exclude evidence of any construction defect which had not yet caused property damage. The trial court granted the defendants' motions *as to the tort claims only* and the Court of Appeal denied writ relief.[29]

By the time the case reached the Supreme Court the plaintiffs no longer contended strict liability provided a remedy for defects which had not caused property damage, i.e., defects causing only economic loss. Thus, the court defined the issue as whether the plaintiffs could "recover in negligence from the entities that built their homes a money judgment representing the cost to repair, or the diminished value attributable to, construction defects that have not caused property damage."[30] The court held in actions for negligence in home construction, a manufacturer's liability is limited to damages for injury to person or property; no recovery is allowed for economic loss alone.[31] In so ruling, the court distinguished its earlier decision in *J'Aire Corp. v. Gregory*[32] on the ground the plaintiffs in *Aas* had not demonstrated the foreseeability, appreciable harm and moral blame required to establish tort liability under *J'Aire*.[33]

Because the trial court had not precluded the plaintiffs in *Aas* from introducing evidence of economic damages in support of their breach of warranty claims, the Supreme Court had no occasion to address the specific issue raised in the cause before us. The court did, however, contrast the kind of damages recoverable in product liability cases based on negligence from those based on breach of warranty. As a general rule, "tort law provides a remedy for construction defects that cause property damage or personal injury . . . [b]ut the difference between price paid and value received and deviations from standards of quality that have not resulted in property

[28]*Aas, supra,* 24 Cal.4th at page 633.
[29]*Aas, supra,* 24 Cal.4th at page 634.
[30]*Aas, supra,* 24 Cal.4th at page 635.
[31]*Aas, supra,* 24 Cal.4th at pages 632, 652.
[32]*J'Aire v. Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60].
[33]*Aas, supra,* 24 Cal.4th at pages 646-647.

damage or personal injury, are primarily the domain of contract and warranty law . . . rather than of negligence."[34] Responding to plaintiffs' argument they could make the cost of repairs ascertainable within the meaning of *J'Aire* by voluntarily repairing the defects and obtaining a receipt for the money spent, the court stated: "This confuses the *measurement* of alleged damages with the ability of particular facts to support a tort action. To say that one's house needs repairs costing a certain amount is not necessarily to say that one has suffered the type of harm cognizable in tort, as opposed to contract."[35]

The plaintiffs in *Aas* appear to have been in the same situation as plaintiffs in the cause before us insofar as they, like plaintiffs here, suffered economic loss but, as yet, no actual property damage. The trial court in *Aas* denied the defendants' motion to exclude evidence of economic loss as to the plaintiffs' breach of warranty claims and the defendants did not challenge that ruling. Nevertheless, the Supreme Court's discussion of the differences in damages recoverable in negligence versus breach of warranty clearly suggests the court would have upheld the trial court's ruling with respect to the breach of warranty causes of action.

Kaufman relies on *Khan v. Shiley Inc.*, an action by the recipient of a mechanical heart valve seeking damages for emotional distress caused by her fear the valve would fail.[36] Khan's complaint alleged, " '[A]n extraordinary number [of defendants' valves] have malfunctioned . . . causing death or other serious injury and damages to those persons in whom the . . . valves were implanted and their spouses.' "[37] Kahn conceded her valve " 'has not yet malfunctioned' " but alleged the valve " 'is defective and likely to malfunction at any moment . . . .' "[38] The trial court granted defendants' motion for summary judgment and Kahn appealed. The Court of Appeal framed the issue as whether "the owner of a product, functioning as intended but containing an inherent defect which may cause the product to fail in the future, has an action against the manufacturer."[39]

Affirming the judgment for defendants in *Khan*, the court noted Khan's possible theories of recovery included strict liability in tort, negligence and breach of warranty but "[n]o matter which theory is utilized . . . where a

[34]*Aas, supra*, 24 Cal.4th at pages 635-636.
[35]*Aas, supra*, 24 Cal.4th at page 646, italics in original.
[36]*Kahn v. Shiley Inc.* (1990) 217 Cal.App.3d 848, 850-852 [266 Cal.Rptr. 106] (hereafter *Kahn*).
[37]*Khan, supra*, 217 Cal.App.3d at page 852.
[38]*Khan, supra*, 217 Cal.App.3d at page 852.
[39]*Khan, supra*, 217 Cal.App.3d at page 854, footnote omitted.

plaintiff alleges a product is defective, proof that the product has malfunctioned is essential to establish liability for an injury *caused by the defect.*"[40] Here, the court concluded, "Khan's alleged emotional injuries are not a basis for recovery absent a ground for imposing liability pursuant to a recognized cause of action. So long as the valve continues to function, no cause of action exists under *any* products liability theory."[41] Kaufman places great emphasis on the comprehensive language of the last quoted sentence. However, as we proceed to explain, that sentence does not accurately reflect the holding in *Khan* nor the state of the law on breach of warranty claims.

Because of the sweeping language in *Khan*, proclaiming "[s]o long as the valve continues to function, no cause of action exists under any products liability theory,"[42] it might appear *Anthony* and *Khan* were addressing the same question—whether malfunction is an element of a cause of action for breach of warranty—and that they reached contrary conclusions, *Anthony* holding malfunction is not an element of the cause of action and *Khan* holding that it is. In reality the two cases did not address the same issue. *Anthony* addressed the issue whether a product containing a design defect must fail to perform as warranted before the plaintiff can recover economic damages under breach of warranty for its repair or replacement.[43] *Khan* addressed the issue whether a product containing a design defect must fail to perform as warranted before the plaintiff can recover damages under breach of warranty *"for an injury caused by the defect"* (in this instance, the patient's emotional distress attributable to living with a defective artificial heart valve)."[44]

The parties stipulated in *Khan* the plaintiff's heart valve "has not yet malfunctioned" and she was not seeking damages for the cost of replacing the valve but for emotional distress brought on by worrying the valve would fail.[45] The court properly concluded the plaintiff could not recover for her personal injury because the essential element of causation was missing. "Khan's alleged injury was not caused by any defect in the valve. Rather, it was caused, if at all, by the knowledge the valve may, at some future time, fracture."[46] In other words, the primary right alleged to have been violated in *Khan* was not the right to take a product free from defect but the right to be free from emotional distress caused by worry the defect would result in

---

[40]*Khan, supra,* 217 Cal.App.3d at page 855, italics in original.

[41]*Khan, supra,* 217 Cal.App.3d at page 857, italics added.

[42]*Khan, supra,* 217 Cal.App.3d at page 857.

[43]*Anthony, supra,* 33 Cal.App.3d at pages 704-705.

[44]*Khan supra,* 217 Cal.App.3d at page 855, italics added and in original.

[45]*Khan, supra,* 217 Cal.App.3d at page 852.

[46]*Khan, supra,* 217 Cal.App.3d at page 855.

physical injury. The court held, "Khan's alleged emotional injuries are not the basis for recovery [under] a recognized cause of action."[47]

In *Anthony*, the situation was reversed. There the plaintiffs did not seek to recover for physical injury or property damage *caused* by the defect in the truck wheels. Rather, they sought to recover the cost of replacing the defective wheels. The primary right alleged to have been violated in *Anthony*, as in the case before us, was the right to take a product free from defect. The defect did not *cause* the plaintiffs' injury; the defect *was* the injury.

Kaufman also relies on *American Suzuki Motor Corp. v. Superior Court*, a class action with some similarities to the present case.[48] There the plaintiffs alleged the design of the Samurai, a sport utility vehicle manufactured by defendant, " 'create[d] an unacceptable risk of a deadly roll-over accident when driven under reasonably anticipated and foreseeable driving conditions . . . .' " Under the theory of breach of implied warranty the plaintiffs sought to recover for themselves and all other owners of the vehicle " 'the cost of repairing the inherent safety defect in the Samurai.' " Like plaintiffs in the present case, the plaintiffs in *American Suzuki* did not allege they had suffered any property damage or personal injuries as a result of the alleged design defect but relied on the declaration of an expert who testified the Samurai had a rollover design defect which rendered it unsafe.[49] The Court of Appeal granted defendant's petition for a writ of mandate decertifying the class.

The issue framed by the court in *American Suzuki* was whether the plaintiffs could state a cause of action for breach of implied warranty where "they have suffered no personal injury or property damage from a vehicle they claim is defectively designed, and it is impliedly conceded that their vehicles have—since the date of purchase—remained fit for their ordinary purpose[.]"[50] The court concluded from the evidence that because only a small percentage of the Samurais had been involved in rollover accidents the Samurai was not defective as a matter of law and therefore the plaintiffs could not state a cause of action for breach of implied warranty.[51]

*American Suzuki* and *Feinstein* are distinguishable from the case at bench. Those implied warranty cases were not decided on the ground a defect must

---

[47]*Khan, supra*, 217 Cal.App.3d at page 857.

[48]*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1293 [44 Cal.Rptr.2d 526] (hereafter *American Suzuki*).

[49]*American Suzuki, supra*, 37 Cal.App.4th at pages 1293-1294.

[50]*American Suzuki, supra*, 37 Cal.App.4th at page 1293.

[51]*American Suzuki, supra*, 37 Cal.App.4th at pages 1298-1299. See also *Feinstein v. Firestone Tire and Rubber Co.* (S.D.N.Y. 1982) 535 F.Supp. 595, 603-604 (hereafter *Fein-*

have resulted in the product malfunctioning in order to give rise to a suit for breach of warranty. Rather, they were decided on the ground that since there was no history of the products failing they were not, as a matter of law, defective.[52] Foundations, however, are not like cars or tires. Cars and tires have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for.[53] A foundation's useful life, however, is indefinite. Some houses continue to provide shelter for centuries. And, in contrast to the cars and tires in *American Suzuki* and *Feinstein*, plaintiffs in the case at bench presented expert testimony based on observations and analysis showing foundations containing Fibermesh "will someday most likely crack badly" and cause problems such as insect and vermin infestation, bumps in the floor and premature wearing of carpeting and damage to vinyl floor coverings and ceramic tile.

We conclude, therefore, if plaintiffs prove their foundations contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of Kaufman's express and implied warranties.[54] It is not necessary for each individual homeowner to prove his foundation has already cracked or split or that he has suffered property damage as a result of the cracking or splitting. We see no reason why a homeowner should have to wait for the inevitable injuries to occur before recovering damages to repair the defect and prevent the injuries from occurring.

III.   *Common Questions of Law and Fact Do Not Predominate as to the Strict Liability and Negligence Causes of Action.*

■   It is well-settled strict liability and negligence do not provide a remedy for defects which have not caused property damage, i.e., defects

---

*stein*) denying class certification in an action for breach of implied warranty on the ground "[t]he majority of the tires sold to putative class members [did] what they were supposed to do for as long as they were supposed to do it[.]"

[52]*American Suzuki, supra*, 37 Cal.App.4th at pages 1298-1299; *Feinstein, supra*, 535 F.Supp. at pages 603-604.

[53]Cf. *Microsoft Corp. v. Manning* (Tex.App. 1995) 914 S.W.2d 602, 609 (breach of warranty case holding that if defect is inherent in software product individual class members need not prove property damage in order to recover cost of correcting defect).

[54]Kaufman argues if we are going to hold malfunction is not an element of a cause of action for breach of warranty we should at least require proof the product is 100 percent certain to fail, not just substantially certain to fail. We doubt there are many reputable scientists or engineers willing to testify they are absolutely certain of any prediction about how a man-made product will function in the future. Furthermore, a substantial certainty the product will fail is sufficient to injure its owner by reducing the value of the product.

causing only economic damage.[55] Accordingly, to recover under these theories of liability each class member would have to come forward and prove specific damage to her home (e.g., uneven floors, insect infestation, misaligned doors and windows), and that such damage was caused by cracks in the foundation, not some other agent.

Given this need for individualized proof, commonality of facts is lost and the action splits into more pieces than the allegedly defective foundations.

*IV. The Fact Plaintiffs Only Seek Economic Damages Does Not Necessarily Mean They Are Inadequate Class Representatives.*

■■■■■ SI maintains plaintiffs are not adequate class representatives and that this constitutes an independent ground for upholding the trial court's order denying class certification.[56]

■ The contention here is that the named plaintiffs have violated their fiduciary duty to the class by limiting the recovery they seek on behalf of the class to the cost of repairing or replacing the foundations.[57] In doing so, plaintiffs are effectively waiving on behalf of thousands of class members any possibility of recovery for property damage to their homes because a judgment on the breach of implied and express warranty causes of action would bar recovery in a second suit on the same legal theories.[58] In *City of San Jose*, the court held that in order to be an adequate class representative, the plaintiff "must raise those claims 'reasonably expected to be raised by the members of the class.' "[59] Members of the class in this case who have

---

[55]See *Fieldstone Co. v. Briggs Plumbing Products, Inc.* (1997) 54 Cal.App.4th 357, 363-366 [62 Cal.Rptr.2d 701] and cases cited therein (strict liability); *Aas, supra*, 24 Cal.4th at page 632 (negligence).

[56]SI raised this argument in its memorandum of points and authorities opposing class certification, but the trial court did not rely on this ground in its order. Nevertheless, we may consider the argument on appeal because, with a few exceptions not relevant here, a trial court's decision will be affirmed if it is correct on any legal theory. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (1999) ¶¶ 8:214, 8:215, p. 8-106, and cases cited therein.) Contrary to plaintiffs' claim, it is not necessary for the respondent to file a cross-appeal in order to raise an additional legal ground for affirming the judgment or order against the appellant. (*Id.* at ¶ 8:196, pp. 8-101 to 8-102.)

[57]We do not need to examine complaints in other class action suits to resolve this issue and SI's request for judicial notice of other pending cases is denied.

[58]See *City of San Jose, supra*, 12 Cal.3d at page 464 (plaintiffs in nuisance action not adequate class representatives because they sought only damages for diminution in value and not other damages allowable in such an action).

[59]*City of San Jose, supra*, 12 Cal.3d at page 464.

suffered property damage such as harm to their carpets and tiles or infestation of dirt or vermin would reasonably be expected to seek recovery for such damage under their breach of warranty causes of action.[60]

Furthermore, SI argues, this is not the kind of case where an amendment to the complaint could cure the defect[61] or where a class action is superior to individual actions even though each class member must prove his or her own damages.[62] Once individualized property damage is introduced into the case, the case can no longer proceed as a class action for breach of warranty for the same reason it cannot proceed as a class action for strict liability or negligence, as discussed in part III, *ante*. Factual commonality disappears and the court is left trying thousands of questions of fact as to causation. Moreover, proving individual claims for property damage is not like proving individual claims for unpaid welfare benefits[63] or overcharged taxi rides[64] where the amount of the claims can be mathematically calculated based on the defendant's own records.

In our view, it is premature to sound the death knell for this class action based on inadequacy of representation.

In reaching its decision in *City of San Jose*, the Supreme Court did not mention rule 23(c)(4) (28 U.S.C) of the Federal Rules of Civil Procedure, although it acknowledged California courts should look to rule 23 "in determining whether to allow the maintenance of a particular class suit."[65] Rule 23(c)(4) states: "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be subdivided into subclasses and each subclass treated as a class . . . ."

There are several ways in which the trial court could certify a class without waiving the right of class members with property damage to recover for that damage. For example, the trial court could limit the class issues to liability for breach of warranty vel non and allow each class member to use that judgment as the basis for an individual action to recover damages for the

---

[60]See California Uniform Commercial Code section 2715, subdivision (2)(b).
[61]See *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113].
[62]*Vasquez, supra*, 4 Cal.3d at page 815.
[63]*Reyes, supra*, 196 Cal.App.3d at page 1267.
[64]*Daar, supra*, 67 Cal.2d at page 714.
[65]*City of San Jose, supra*, 12 Cal.3d at page 453. The court's opinion suggests that its failure to discuss the possibility of proceeding under rule 23(c)(4) resulted from its earlier determination that no class could be defined that would have a sufficient community of interest and, therefore, affording the plaintiffs an opportunity to amend the complaint to cure inadequate representation "would serve no useful function." (12 Cal.3d. at p. 464, fn. 14.)

breach.[66] Alternatively, the court could divide the class into subclasses: those asserting only economic damages and those asserting economic damages and property damage.[67] We do not take it as a given that the latter subclass would number "thousands" of homeowners. It might turn out the subclass of homeowners with property damage is too small to justify class treatment, or its size may be manageable. Another possibility is for the trial court to use the class notice procedure to give those class members with property damage the opportunity to opt out of the class. This was the solution adopted by the court in *Anthony* when faced with the same argument raised by SI in the present case.[68]

Given the options discussed above, we cannot conclude without further proceedings in the trial court that class certification must be denied on the basis of inadequate class representation or the lack of typicality between the claims of the plaintiffs and those they seek to represent.

## V. *Directions on Remand.*

We have held a class action cannot be maintained on the causes of action for strict liability and negligence, because the individual factual questions as to causation and damages would make a class action unmanageable. We have also held a class action may be maintained on the causes of action for breach of express and implied warranty, subject to the trial court's resolution of the adequacy of representation or "typicality" issue, discussed in part IV of this opinion, and the ability to eventually identify class members other than by digging up the foundations under thousands of homes.

On remand we leave it to the trial court, in consultation with the parties, to draft a definition of the class or subclasses, if any. We note, however, that in defining the class or subclasses the court should not make "manifest damage" to a slab a precondition for class membership. (See pts. I and II of this opinion.) The court's definition should recognize, however, privity with Kaufman is necessary for recovery under an implied warranty theory.[69]

---

[66]*Microsoft Corp. v. Manning, supra,* 914 S.W.2d at page 611; and see 2 Newberg on Class Actions, *supra,* section 6.14, page 6-61.

[67]Since the named plaintiffs allege they have suffered property damage caused by the use of Fibermesh in their foundations, they can represent both subclasses.

[68]*Anthony, supra,* 33 Cal.App.3d at page 704. See also *Chance v. Superior Court* (1962) 58 Cal.2d 275, 290 [23 Cal.Rptr. 761, 373 P.2d 849] (holding dispute among class members about efficacy of relief sought by class representatives could be resolved by notice to class and opportunity to appear and argue for any and all appropriate forms of redress against the defendants).

[69]*Anthony v. Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 448 [102 Cal.Rptr. 113].

## DISPOSITION

The trial court's order denying class certification is reversed as to the causes of action for breach of express and implied warranty and affirmed in all other respects. The cause is remanded to the trial court for reconsideration consistent with the views expressed in this opinion. Plaintiffs are awarded their costs on appeal.

Woods, J., and Boland, J.,* concurred.

A petition for a rehearing was denied July 3, 2001, and the opinion was modified to read as printed above. The petition of respondents Kaufman and Broad Home Corporation et al. for review by the Supreme Court was denied September 26, 2001. Chin, J., and Brown, J., were of the opinion that the petition should be granted.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.