Filed 10/7/25; Certified for Publication 10/24/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FREDERICK H. LEEDS et al., | B341355 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC677423, BC664070, BC709658) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge.  Affirmed.

Kellner Law Group, Richard L. Kellner; Kabateck, Brian S. Kabateck; Ervin Cohen & Jessup, Geoffrey M. Gold and Brandon Orewyler for Plaintiffs

and Appellants, Frederick H. Leeds; individually and as trustee for the Frederick Leeds Trust, Malcom Bennett and 7005 L.P.

Shining Law Firm, Carolin K. Shining; Arias Sanguinetti Wang & Team, Mike Arias, Arnold C. Wang and Matthew J. Kita for Plaintiffs and Appellants Apartment Owners Association of California, Daniel C. Faller, Jasbir Dhillon, Gary Gillman and Anita Haeggstrom.

Colantuono, Highsmith & Whatley, Holly O. Whatley, Pamela K. Graham and Liliane M. Wyckoff for Defendant and Respondent.

---

In 2017, respondent City of Los Angeles (the City) implemented "recycLA," a new system for waste collection services to commercial and multi-unit dwellings in the city. Under this program, the City entered into franchise contracts with seven waste haulers, pursuant to which each hauler would provide exclusive waste collection services in a designated zone. The contracts provided that the haulers would pay the City a percentage of their gross receipts as a "franchise fee."

Appellants, several commercial and multi-unit property owners and tenants, filed a consolidated class action against the City. They alleged that they were required to pay for waste hauling services under this program and that the haulers charged higher prices because of the franchise fees. As such, appellants contended that the franchise fees were effectively a "tax" imposed on them without voter approval in violation of Proposition 218. Appellants sought a refund of the illegal taxes paid and declaratory relief.

The trial court denied class certification, concluding that common issues did not predominate and that class treatment was not the superior method of resolving the dispute. On appeal, appellants argue that the trial court erroneously focused on evidence that some class members passed on the cost of the franchise fees to their tenants, while others did not. We find no error and affirm.

**BACKGROUND**

## I.    *RecycLA*

The factual background regarding the City's program is largely undisputed. In 2014, the City adopted Ordinance No. 182,986 authorizing the waste hauling franchise system as part of recycLA. In December 2016, the

City entered into exclusive franchise agreements with seven private waste haulers, which gave the haulers the exclusive right to provide and charge for waste collection services for commercial structures and multi-family residences within 11 zones. The City estimates that recycLA served around 60,000 customer accounts within the 11 franchise zones. The franchise agreements set rates for base services offered to all customers, as well as additional services the haulers could offer, setting a maximum allowable rate for the additional services. The franchise agreements also required the haulers to pay to the City a quarterly "franchise fee," calculated as a set percentage of customer gross receipts.

## II.    *Complaint*

In 2018, appellants Apartment Owners Association of California, Inc. (AOA), Daniel C. Faller, Jasbir Dhillon, Gary Gillman, Anita Haeggstrom, Frederick H. Leeds, individually and as trustee for the Frederick H. Leeds Intervivos Trust Dated November 30, 1990, Malcolm Bennett, and 7005 L.P., filed a consolidated class action complaint against the City regarding the implementation of the recycLA program. Appellants alleged that the purported franchise fees did not qualify as such, but were in fact "an illegally imposed tax" that was passed through to them in violation of Proposition 218, as well as article XIII C of the Constitution, as amended by Proposition 26.[1]

Appellants alleged that they each paid waste haulers under the recycLA system. Specifically, appellant AOA alleged that it was a commercial tenant, appellants Faller and Dhillon alleged that they each owned a commercial property, appellant Gillman alleged that he owned 19 multi-family residential properties, and appellant Haeggstrom alleged that she owned a condominium in a multi-family residential property. The

---

[1]    In 1996, voters passed Proposition 218, which added article XIII C to the Constitution and required that all taxes must be approved by voters in a general election. (Art. XIII C, § 2, subds. (a), (b), (d); see also *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 785 (*Zolly*).) In 2010, Proposition 26 amended article XIII C to provide, with certain exemptions, that a "'tax' means any levy, charge, or exaction of any kind imposed by a local government." (Art. XIII C, § 1, subd. (e); see also *Zolly*, *supra*, 13 Cal.5th at p. 785, citing *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 260.)

remaining three named plaintiffs, appellants Leeds, Bennett, and 7005 L.P. simply alleged that they paid the haulers. Appellants sought to represent a class of "[a]ll persons who, from July 1, 2017 until the date that notice of this class action is disseminated to the class, paid for the collection, transfer, processing, and/or disposal services provided . . . under the recycLA Franchises System."

In the first cause of action, appellants sought an order "directing the City to refund the illegal taxes paid" under the guise of franchise fees. In the second cause of action for declaratory relief, appellants sought a "declaration as to the validity and enforceability of the rates charged and fees collected pursuant to the recycLA program ... so that [appellants] may determine their ongoing rights and obligations."[2]

## III. *Class Certification*

Appellants moved for class certification. They argued that the core issue to be litigated—whether the franchise fees were an illegal tax— necessarily involved common issues of fact and law. They argued that the class was sufficiently numerous at approximately 66,000 customers, and readily ascertainable as the City maintained a database with the names and addresses of its hauler customers. Appellants also argued that they had established a community of interest among the class members, including the proposed class representatives, because all of the issues of liability arose out of common facts and law. They also contended that a class action was the superior method to resolve the dispute, given the cost and efficiencies in litigating their claim of an illegal tax in a single action rather than individual claims by customers.

In opposition, the City argued that the class was not ascertainable, because the City did not have a record from the waste haulers of "who actually pays what amount for which trash services." In addition, the City

---

[2]     In our prior opinion, *Apartment Owners Association of California, Inc. v. City of Los Angeles* (Dec. 28, 2022, No. B313439) [nonpub. opn.], we reversed the trial court's grant of summary judgment in favor of the City. Based on the newly decided *Zolly, supra,* 13 Cal.5th at pp. 789-790, we found that appellants had standing to challenge the franchise fees even though they were not "directly obligated" to pay them to the City.

argued that individual questions of fact predominated over the threshold common issue of whether the fees were an illegal tax. In particular, the City suggested that individual inquiry would be required to determine which class members were entitled to a refund and which were not, as some landlords, for example, could have passed the cost along to their tenants. The City also contended that the issue of some owners who paid fees and some who passed them along could create intra-class conflict. As such, the City asserted that class treatment was not superior to individual actions, noting that the mechanisms of declaratory and injunctive relief did not require class certification to obtain the desired result.

During oral argument, the parties argued at length regarding the issues raised by the court regarding potential class members who did not bear the cost of the franchise fee because they passed it on. Appellants' counsel suggested that they could include tenants in the class definition. The court later asked whether appellants would consider defining the class as "[p]ersons who made payment to waste hauling companies for the removal of trash from commercial establishes [sic] and multi-family dwellings, including the illegal tax for which they were never reimbursed by anybody else, in whole or in part." Appellants' counsel responded that he would "want to have the tenants included as well because our . . . interest here is the illegal tax." At the conclusion of the hearing, the court asked several times whether the parties wanted the opportunity to file additional briefing. Both parties declined.

The court issued a 22-page order denying class certification. In sum, the court found that while appellants "carry their burden on many of the elements of class certification, there is a fundamental problem with the proposed class definition and the associated elements of a 'well-defined community of interest' and 'superiority.'" Specifically, the court first found that appellants met their burden to show that the class was sufficiently numerous and ascertainable. The court rejected the City's argument that it could not determine who made payments for waste hauling, agreeing with appellants that records maintained by the waste haulers would likely contain the necessary customer information. Second, the court also agreed with appellants that the "question of whether the surcharges were a tax is a

5

question susceptible of common proof. It focuses entirely on the character of the surcharge, not on any specific factual circumstance particular to each member of the putative class."

The court agreed with the City, however, regarding its "predominant opposing argument . . . that the proposed class includes individuals or entities who might have been billed for, or even paid, the challenged fees, but then passed the cost of the fees through to other individuals or entities, namely tenants." Although the City framed the issue as one of ascertainability, the court considered it relative to whether the "entitlement to refunds is not a question susceptible of common proof." The court noted that while the proposed class was defined as members "who made payments" to waste haulers, the focus on "making payments" was incorrect. Instead, the court found that appellants' "real claim is for refunds and that requires a class of persons who both made payments and suffered an economic loss because they did not pass through the payments to others. That core issue is not susceptible to common proof." The court rejected appellants' reliance on *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758 (*Clayworth*), in which our Supreme Court found that defendants could not raise a "pass-on defense" in the context of antitrust and unfair competition claims. The court found that the reasons articulated for disallowing the defense in *Clayworth* "do not necessarily apply here, nor do [appellants] present evidence or argument as to why they should." The court also distinguished between whether the pass-on defense "can serve as a defense to liability," as discussed in *Clayworth*, versus the issue here, "whether the proposed class shares in common the question of entitlement to potential refunds if the challenged fees were found to be, as [appellants] contend, an unlawful tax. The evidence shows the answer is no—members of the class who are landlords did not likely absorb the cost of the fee passively—therefore arguably raising the risk of unjust enrichment."

The court found that the same issue meant appellants could not establish that a class action was superior. The court found that disparities between class members who suffered an economic loss and those who did not "raises the risk of unjustly enriching the portion of the class that might have paid the challenged fees but ultimately suffered no economic loss, having

6

passed the cost of the fees to non-class members." Accordingly, the court concluded that "a class proceeding is not the superior method of resolving the parties' dispute" and denied class certification.

Appellants timely appealed.

## DISCUSSION

### I. *Legal Standards*

A lawsuit may proceed as a class action "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) To certify a class, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) "'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Ibid.*)

The inquiry into whether class members' common questions predominate over the questions affecting individual members focuses on whether "'the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Brinker, supra*, 53 Cal.4th at p. 1021.) In making this assessment, a court must "examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Id.* at pp. 1021-1022.) "[B]ecause group action . . . has the potential to create injustice, trial courts are required to "'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts."'" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.)

"'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court

7

ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used; or (2) erroneous legal assumptions were made. . . . "Any valid pertinent reason stated will be sufficient to uphold the order."" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*); accord, *Brinker*, *supra*, 53 Cal.4th at p. 1022.) "Unlike the general rule compelling a reviewing court to scrutinize the result below, not the trial court's rationale, we analyze the propriety of an order denying class certification based solely on the lower court's stated reason for the decision." (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1223–1224.)

When a class certification motion depends on the evaluation of disputed evidence, we review the trial court's factual determinations under the substantial evidence standard. (*Sav-On, supra*, 34 Cal.4th at p. 328.) "Predominance is a factual question; accordingly, the trial court's finding...generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the . . . order . . . the existence of every fact the trial court could reasonably deduce from the record. . . .'" (*Brinker, supra*, 53 Cal.4th at p. 1022.)

## II. *Analysis*

Appellants argue that the trial court erred in finding they failed to establish a predominance of common questions of law and fact and that a class action was not superior to alternatives. We find no error.

### A. *Predominance of common questions*

Appellants contend that the trial court improperly considered whether they could pass on the costs of the franchise fees to tenants or other downstream payees, contrary to the holding in *Clayworth, supra*, 49 Cal.4th 758.[3] We agree with the trial court's careful analysis and conclusion that

---

[3] We disagree with appellants' assertion that the trial court's consideration of this issue was sua sponte. Although the City primarily argued about passing through costs in relation to the ascertainability of the class, as the trial court recognized, the issue of the differences between class members who might have been reimbursed and those who were not was a central point in the City's opposition to certification.

*Clayworth* does not constrain consideration of this issue in the context of a motion for class certification.

In *Clayworth*, retail pharmacies filed suit against pharmaceutical manufacturers, alleging unlawful price fixing in violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). (*Clayworth, supra*, 49 Cal.4th at pp. 764-765.) The defendants argued the claims were barred because the plaintiffs had not been injured, inasmuch as they had passed on any overcharges to third parties. (*Id.* at p. 765.) The Supreme Court found that the "pass-on" defense could not defeat liability for antitrust claims, although it also noted that "defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages."[4] (*Id.* at p. 787.) The *Clayworth* court did not consider issues of class certification, including whether a trial court could assess issues of passed-on costs as part of the analysis into whether certification was proper. As the trial court put it, "here, the issue is whether the proposed class shares in common the question of entitlement to potential refunds if the challenged fees were found to be . . . an unlawful tax." As such, we find no error in the trial court's consideration of this issue.[5]

---

[4]     In *Clayworth*, the court explained that in "instances where multiple levels of purchasers have sued," "if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted; defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages." (*Clayworth, supra*, 40 Cal.4th at p. 787.) As in *Clayworth*, there is the possibility of duplication of damages here. Plaintiffs consist of class representatives of tenants, landlords, and parties who paid waste haulers. Accordingly, three different parties could potentially recover for the same franchise fee paid to the City.

[5]     During oral argument, counsel for appellants argued for the first time that the pass-on issue was analogous to the collateral source rule, citing *Helfend v. S. Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1. Appellants have forfeited this argument by failing to raise it in their appellate briefs. (See *Applied Materials v. Workers' Comp. Appeals Bd.* (2021) 64 Cal.App.5th 1042, 1080, fn. 16 ["'We do not consider arguments that are raised for the first time at oral argument.'"]; *Pinter-Brown v. Regents of University of California*

Appellants' contention that the trial court applied a "novel" pass-on theory to limit damages misconstrues the context of the court's order. The court was not making a finding on the merits as to the damages any individual plaintiff might be able to recover; rather it was considering the individualized issues raised by dissimilarly situated plaintiffs in the context of class certification. Additionally, appellants suggest that the court had limited evidence that any plaintiff actually passed on the costs of the franchise fee. But it was appellants' burden to establish the propriety of class treatment. The court's finding that they had not met that burden was supported by substantial evidence, including testimony from Leeds that he set his tenants' rent to cover his costs and evidence that some multi-unit property owners used a ratio billing system to allocate utility costs among tenants.

As the City points out, most of the appellants are in an unusual position—like their tenants, they were not directly obligated to pay franchise fees by the City. Rather, the City charged franchise fees to the waste haulers under their franchise agreements. Appellants contend they were injured when the cost of those franchise fees was passed on to them through increased waste collection rates. The *Zolly* court agreed in a case challenging similar fees in Oakland, finding that the plaintiffs (owners of multi-family properties) had alleged sufficient economic injury to have standing to pursue their claims of an illegal tax even though they were not "directly obligated" to pay the fees. (*Zolly, supra*, 13 Cal.5th at p. 789.) Thus, appellants have standing because costs were passed on to them, but argue the court cannot also look at whether costs were passed on by appellants to their tenants.

Appellants also contend that even if the court could consider whether they passed on costs, that issue is related to damages and therefore should not defeat certification. They cite *Brinker* for the proposition that "[a]s a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. *(Brinker, supra*, 53 Cal.4th at p. 1022,

_____

(2020) 48 Cal.App.5th 55, 95; see also *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761 [issues not properly addressed in the opening brief will be disregarded].)

quoting *Hicks v. Kaufman and Broad Home Corp*. (2001) 89 Cal.App.4th 908, 916 (*Hicks*).)

On the other hand, our Supreme Court has "cautioned that class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment"' on common issues." (*Duran v. U.S. Bank National Assn*. (2014) 59 Cal.4th 1, 28; see also *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1111 ["The questions respecting each individual class member's right to recover that would remain following any class judgment appear so numerous and substantial as to render any efficiencies attainable through joint trial of common issues insufficient, as a matter of law, to make a class action certified on such a basis advantageous to the judicial process and the litigants."].)

The court here expressed just such a concern, finding that the "core question" of appellants' claim was "whether the proposed class is entitled to refunds of the fees that allegedly constituted an unlawful tax." Appellants seek to identify the question of liability as solely whether the franchise fees were an illegal tax. But while the court agreed that question was subject to common proof, it disagreed with appellants' narrow focus. Instead, the court found that appellants' "real claim is for refunds and that requires a class of persons who both made payments and suffered an economic loss because they did not pass through the payments to others." As such, the issue of whether a class member bore or passed through the cost of the franchise fees was more complex than a straightforward damages analysis.

This situation is in contrast to the cases appellants cite. In *Hicks*, for example, the court found that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." (*Hicks, supra,* 89 Cal.App.4th at p. 918.) Thus, the plaintiffs' claims for breach of home warranty were properly subject to common proof of an inherent defect in the product and did not require proof that each class member's home foundation had cracked. (*Ibid*.)

11

Here, appellants alleged a claim for refund of an illegal tax. Whether a class member was entitled to that refund depended not only on whether they paid for waste services, but also whether they bore the cost of the franchise fees. This determination was complicated by the constellation of relationships between apartment and building owners, homeowners' associations, tenants, and other class members, and the fact that the fees were directly paid by the haulers, then allegedly passed through to the owners and landlords, then potentially passed through again to tenants. As such, "substantial evidence supported the trial court's conclusion that common issues of fact did not predominate over the proposed class 'because the members of the class stand in a myriad of different positions insofar as the essential allegation in the complaint is concerned.'" (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 943; see also *Zolly, supra*, 13 Cal.5th at p. 792 [noting that if the defendant "is suggesting there is uncertainty as to whether any portion of customers' bills is actually attributable to the fees, that is a factual issue bearing on plaintiffs' allegations of financial injury"].)

Appellants argue the court should have weighed more heavily the risk of unjust enrichment to the City if it was not required to refund illegal fees versus the potential that some landlords might receive a refund even if they had passed on the cost to others. But we leave these determinations to the trial court's broad discretion in determining whether certification is appropriate. (See *Sav-on, supra*, 34 Cal.4th at p. 326.) Here, the court expressly considered the risk of unjust enrichment to class members who had not actually paid the franchise fees, as they would have no incentive to pass on any reimbursement to their tenants who did bear the cost. As such, appellants have not established that the court erred in its analysis in determining that individual issues predominated over common ones.

## B.  *Superiority*

We also find no error in the trial court's conclusion that a class action would not be the superior means of resolving the litigation. "Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.]" (*Linder, supra*, 23

12

Cal.4th at p. 435.) "[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing." (*Ibid.*) "[B]ecause group action also has the potential to create injustice, trial courts are required to "'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.'"" (*Ibid.*; see also *Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101.)

As noted above, the court articulated concerns regarding the potential for unjust enrichment should class members keep refunds whose cost they did not bear. On the other hand, the City points out that a single plaintiff could seek a writ of mandate, declaratory and injunctive relief and thereby obtain the benefits appellants seek—a determination that the franchise fees were unconstitutional and an order enjoining future misconduct, as well as allowing a plaintiff to prove that she made payments and did not pass them through—without the burdens of a class action. The court rejected appellants' suggestion that the preferable mechanism to deal with claims by tenants would be to proceed with the class, followed by piecemeal litigation by tenants to determine "whether they have a right to a refund against their landlords." Appellants have not shown that the court erred in balancing these concerns.

We also reject appellants' claim that the trial court should have redefined the class. (See *Hicks v. Kaufman and Broad Home Corp.*, *supra*, 89 Cal.App.4th at p. 916 ["if necessary to preserve the case as a class action, the court itself can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable"].) During the hearing on the certification motion, appellants' counsel suggested an alternate class definition to include tenants, but did not explain how such a definition would address the court's concerns regarding predominance of individual issues or superiority. Moreover, at the conclusion of the hearing, the trial court invited the parties to submit additional briefing, but appellants chose not to do so. They therefore forfeited the opportunity to propose a different class definition to address the court's concerns. Further, on appeal appellants have not

13

articulated what class definition could address the court's concerns and allow certification to proceed.  Under these circumstances, appellants have not demonstrated the court's failure to modify the class definition constituted an abuse of discretion.

## DISPOSITION

The order denying class certification is affirmed.  The parties shall bear their own costs on appeal.


COLLINS, ACTING P. J.


We concur:


TAMZARIAN, J.


VAN ROOYEN, J.*


---

*        Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FREDERICK H. LEEDS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B341355 <br><br> (Los Angeles County <br> Super. Ct. Nos. BC677423, <br> BC664070, BC709658) <br><br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION |

THE COURT*

The opinion in the above-entitled matter filed on October 7, 2025 was not certified for publication in the Official Reports. Upon application of respondent and for good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

COLLINS, ACTING P. J.*      TAMZARIAN, J.      VAN ROOYEN, J.**

---

*     **Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.