[No. D053731. Fourth Dist., Div. One. Oct. 13, 2009.]

ROY L. EVANS et al., Plaintiffs and Appellants, v.
LASCO BATHWARE, INC., et al., Defendants and Respondents.

COUNSEL

Epsten Grinnell & Howell, Douglas W. Grinnell and Steven L. Banks for Plaintiffs and Appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker, Patrick M. Kelly, Martin K. Deniston and Daniel H. Lee for Defendant and Respondent Lasco Bathware, Inc.

Horton, Oberrecht, Kirkpatrick & Martha, Luther W. Horton and Richard H. Martha for Defendant and Respondent LSW Tile, Inc.

OPINION

**McDONALD, J.**—Plaintiffs Roy L. Evans and Arthea LaFrades (together plaintiffs) each owned homes in which shower pans manufactured by defendant Lasco Bathware, Inc. (Lasco), were installed. Plaintiffs' action against Lasco alleged the shower pans suffered from design defects that resulted in

water leakage, and the leakage caused damage to adjacent building components. Plaintiffs' fourth amended complaint (FAC), styled as a proposed class action lawsuit, alleged two causes of action against Lasco: a claim for strict products liability, and a claim for negligence.

The present appeal challenges the trial court order denying class certification. Plaintiffs assert the trial court abused its discretion when it denied their motion for class certification.

I

## LAW APPLICABLE TO CLASS CERTIFICATION ORDERS

### A. *Standards for Class Actions*

■ Code of Civil Procedure section 382 authorizes class actions in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).) To establish the requisite community of interest, the proponent of certification must show there are questions of law or fact common to the proposed class (the commonality criterion), and those questions predominate over the different questions affecting individual members (the predominance criterion). (See *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) The community of interest requirement also requires a showing that the proposed class representatives have claims or defenses typical of those held by the class and can adequately represent the class. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

■ The predominance criteria means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701] (*San Jose*).) When the proposed class action will not provide substantial benefits both to the courts and the litigants, it is proper to deny certification. (*Linder, supra,* 23 Cal.4th at p. 435.)

■ In addition to showing predominance of common questions, the proponent has the burden to show the proposed class is ascertainable. "Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class members. [Citations.]" (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271 [242 Cal.Rptr. 339].) Ascertainability, a separate criterion required "to give notice to putative class members as to whom the judgment in the action will be res judicata" (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914 [107 Cal.Rptr.2d 761] (*Hicks*)), is best implemented by "defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." (*Id.* at p. 915.) The ascertainability of members of the class recedes as the right of each individual to recover becomes increasingly dependent on a separate set of facts applicable only to the individual. (Cf. *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964].)

■ A proponent at the class certification stage is not required to identify individual class members (*Stephens v. Montgomery Ward* (1987) 193 Cal.App.3d 411, 419 [238 Cal.Rptr. 602]), demonstrate the merits of their claims (*Linder, supra,* 23 Cal.4th at pp. 440–441), show that each class member has been injured (*Hicks, supra,* 89 Cal.App.4th at p. 914), or identify a form of notice (*Linder,* at p. 444) to obtain class certification. However, the trial court is entitled to consider "the totality of the evidence in making [the] determination" of whether a "plaintiff has presented substantial evidence of the class action requisites" (*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1448 [19 Cal.Rptr.3d 508]), including whether the causes of action asserted on behalf of the proposed class would involve the resolution of common issues of fact and law that predominate over the factual and legal issues applicable to the individual class members' rights to recover on those causes of action. (*Id.* at pp. 1449–1454.)

## B. Standard of Appellate Review

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification" (*Linder, supra,* 23 Cal.4th at p. 435), and " '[a]ny valid pertinent reason stated will be sufficient to uphold the order' " (*id.* at p. 436), as long as the stated reasons are supported by the evidence (cf. *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 328 [17 Cal.Rptr.3d 906, 96 P.3d 194]) or by any properly implied findings (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287–1288 [119 Cal.Rptr.2d 190]). Our review is limited to the

grounds stated, and we ignore any other grounds that might have supported the ruling. (*Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 658 [125 Cal.Rptr.2d 46].)

However, "an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' " (*Linder, supra*, 23 Cal.4th at p. 436.) Accordingly, we examine the stated reasons for the order to determine whether the court relied on improper criteria to deny certification. (*Ibid.*)

## II

## PROCEDURAL AND FACTUAL BACKGROUND RELEVANT TO CLASS CERTIFICATION ORDER

### A. *Allegations of Plaintiffs' FAC*

Plaintiffs' FAC alleged Lasco manufactured defectively designed shower pans that caused the pans to leak and cause water damage to adjacent shower components. The complaint sought to recover only the costs of removing and replacing the shower pans and expressly excluded any consequential damages to adjacent shower components caused by the water leakage. The complaint, styled as a class action lawsuit, proposed to bring the action on behalf of all owners of real property "in which 'PAN' or 'APAN' model shower pans manufactured by LASCO have been installed with tile walls, and where said shower pans have been used at least 500 times," but excluding from the class all persons who had previously filed lawsuits or were plaintiffs in lawsuits as of the date of the complaint. Lasco answered the FAC and also filed a cross-complaint against LSW Tile, Inc. (LSW), and Sun Plumbing Company, Inc. (Sun), for comparative indemnity, contribution and declaratory relief.

### B. *The Class Certification Motion*

*Plaintiffs' Motion*

Plaintiffs' motion for class certification asserted there were questions of law and fact common to the proposed class that predominated over the different questions affecting individual members, the class was ascertainable, and plaintiffs had claims typical of the class and could adequately represent the class. On the commonality and predominance criteria, plaintiffs submitted evidence from an expert witness that the shower pan design was defective and prevented installation in a tile wall shower enclosure in a manner that would prevent water leakage, the nature of the damage attributable to the

defective design was unique, and the nature of the damage was distinguishable from water leakage damage attributable to other causes. Plaintiffs also asserted the damages issue would not impede class treatment because damages would be calculable through a formula that estimated the average cost to replace the shower pan with Lasco's newer generation shower pan, thereby obviating the necessity of class members submitting individual damage estimates.

On the numerosity criterion, plaintiffs submitted evidence that a large number of defectively designed shower pans were sold between 1996 and 2006, and a large number of lawsuits were filed against LASCO involving the shower pans. Plaintiffs finally asserted they possessed claims typical of the proposed class, and plaintiffs' counsel could adequately represent the proposed class.

### Lasco's Opposition

Lasco, joined by cross-defendant LSW and Sun, opposed the class certification motion. Lasco asserted there were numerous obstacles to the ascertainability criterion, including (1) the absence of a ready method for determining which consumers presently had Lasco shower pans installed in their bathrooms;[1] (2) the absence of a ready method for determining whether the shower had been used the requisite number of times; and (3) the absence of a ready method for determining whether a specific consumer would be excluded from the class.[2]

Lasco also asserted common issues did not predominate over individual issues because the only common issue (whether the design was defective) was outweighed by the noncommon issues. Lasco argued that whether any particular shower suffered water damage *at all* (i.e., without regard to the cause of the damage) could only be shown by conducting destructive testing on each class member's shower by removing the tiles and inspecting for damage under the tiled surface. Additionally, even if this destructive testing located water damage, additional individualized testing would also be required to determine whether the subject shower pan was the exclusive cause

---

[1] Lasco noted that because approximately 75 percent of the pans sold by Lasco were sold to wholesale and retail distributors, Lasco's records would not contain the names of homeowners who became the ultimate end users of the pans. Additionally, there would be no ready method for identifying whether an end user who once had a subject shower pan had not remodeled the bathroom and therefore already had replaced the pan.

[2] Lasco noted it was party to hundreds of lawsuits in which construction defect claims were litigated, most of which were settled, and therefore to determine whether a class member might be excluded would require detailed examination of each lawsuit to determine whether a specific homeowner was a person who had "previously filed lawsuits complaining of defective LASCO SHOWER PANS [or was a plaintiff] in such lawsuit[] as of the date of this complaint" within plaintiffs' proposed class definition.

of water damage, or whether other factors caused (or contributed to) each homeowner's water damage.[3] Finally, Lasco argued individualized questions of the amount or extent of damage would be required because of the wide variety of construction materials and methods used to install shower pans, which would require individualized damage determinations for the costs to replace the pans even if no extensive consequential damages to adjacent shower components were uncovered.

Lasco also argued that its affirmative defenses would vary from individual to individual, requiring Lasco to take discovery from, and conduct minitrials as to, each separate class member. Lasco argued that issues of comparative negligence,[4] statute of limitations, assumption of the risk and possible cross-claims against third parties would require individualized resolution and thereby obviate any efficiencies of a class action.

Lasco finally asserted plaintiffs had not shown the proposed representatives were either typical or would adequately represent the class. Lasco argued typicality could not be demonstrated because of the variety of possible actual and proximate causes of water damage. Lasco also asserted, insofar as the representative must adequately represent the class, that requirement is not met

---

[3] For example, Lasco noted that even in the case of proposed class representative Mrs. LaFrades, several other conditions could have caused the water damage. She did not repair or maintain the grout lines, thereby allowing excessive moisture to penetrate to the subwall, and the joint where her shower door touched the tile wall was improperly sealed, which allowed additional water to penetrate the tile. Additionally, the escutcheon plate near the shower valve typically has a weep hole, which allows water trapped behind the tile wall to escape back into the enclosure, but a weep hole was not present on her shower. Additionally, the shower pan has several weep valleys designed to allow the water to migrate back into the pan, but those valleys in Mrs. LaFrades's pan had been improperly sealed with caulk, which caused excessive buildup of moisture. Additionally, it appeared the installer did not correctly leave a one-fourth inch gap where the tile wall joined the shower pan reveal, which was required to allow a channel through which water trapped behind the tile could migrate back into the pan. Finally, there was a large gap between the shower door and the door frame, allowing water to escape when the shower was being used. Moreover, another expert stated that other causes of water damage can be common, including improper installation of the shower valve, improper sealing of the weep hole on the escutcheon, or deterioration of the joint between the pipe and the shower arm. Lasco asserted that, in addition to the noncommon issues of fact raised by this evidence, this evidence raised the problem of an exponentially expanding set of cross-complaints (against the persons who installed the various components of the shower seeking to apportion comparative fault) were the action granted class action treatment.

[4] For example, as to proposed class representative Mrs. LaFrades, discovery showed that she typically took very long showers and then exited the shower without ensuring she was not dripping, both of which could contribute to water damage. Additionally, Mrs. LaFrades received instructions from the builder when she moved into the house advising her of the danger of possible water damage if she did not properly maintain the grout in the shower and caulking along the shower doors, but inspection of those areas revealed problems had developed as to her shower, raising problems of comparative negligence.

if the class member "fail[s] to raise claims reasonably expected to be raised by the members of the class." (*San Jose, supra,* 12 Cal.3d at p. 464.) Lasco argued that because the proposed class action expressly waived any recovery beyond the cost of replacing the pan, thereby waiving class members' claims for damages to other components, plaintiffs did not demonstrate the adequacy of representation requirement.

### Plaintiffs' Reply

Plaintiffs' reply asserted the arguments raised by Lasco against class certification were either incorrect or did not pose insurmountable obstacles to certification. Insofar as is relevant to this appeal,[5] plaintiffs argued individual issues of causation were irrelevant because plaintiffs contended the design of the shower pans necessarily caused water damage, even if the shower pan had been perfectly installed and the homeowner had perfectly maintained the integrity of the grout lines, caulking and weep holes. Plaintiffs asserted that, although these supplemental factors may have exacerbated the damage to the surrounding components, plaintiffs specifically eschewed recovery for that additional damage and only sought the costs to replace the defective pans with nondefective pans, and therefore any additional causes of supplemental damage were irrelevant to the issues to be litigated on behalf of the class. Plaintiffs also asserted that expressly limiting the damage recovery to the costs of replacing the pan did not render them inadequate as class representatives because potential class members who wished to preserve their claim for additional recovery for damage to any surrounding component could opt out of the class. Finally, plaintiffs suggested the court could create subclasses, or alternatively could limit the litigation to the single issue of whether the shower pan was defective and then permit class members to use that judgment as the springboard for individual damages claims.

### C. Trial Court's Ruling

The trial court denied the class certification motion. It concluded that, even without consideration of any distinct additional damages to other components, the need for individualized proof of the amount of damages for removing and replacing the shower pans predominated over the common questions. Moreover, the court appeared to conclude that limiting the recovery to the cost of replacing the pans rendered plaintiffs inadequate as class

---

[5] Plaintiffs attacked other arguments raised by Lasco. For example, replying to Lasco's lack of ascertainability argument, plaintiffs argued the identities of approximately 25 percent of class members could be ascertained from Lasco's records and the proposed public notice would provide sufficient information to the other 75 percent of end users from which those class members could self-identify, and excluded members could be determined from either Lasco's records or other means. However, because the court did not specify the absence of ascertainability was a barrier to certification, we do not further evaluate this impediment.

representatives, because the possible methods for protecting against forfeiture of additional recoveries (such as opting out or creating subclasses) were not feasible or practical under the circumstances presented in this case. Accordingly, the court concluded plaintiffs had not met their burden of showing the common issues predominated over the separate issues or that the class representatives were adequate, and therefore denied certification.

## ANALYSIS

We conclude the trial court did not abuse its discretion when it found class certification was inappropriate. There is substantial evidence from which the court could have concluded the sole common issue (whether the shower pan was defectively or negligently designed) did not predominate over individualized questions of damages, and there is substantial evidence from which the court could have concluded the proposed plaintiffs did not adequately represent the interests of the class.

### Individualized Damages Issues

First, there was substantial evidence to support the trial court's conclusion that, even without considering the problems raised by plaintiffs' decision to limit the damages award to the cost to replace the shower pans in each class member's home, class treatment was inappropriate because individualized trials for each class member's damages would be required to determine the appropriate award for each class member. When evaluating whether to permit an action to proceed as a class action under the community of interest element, it is not sufficient that there are some questions of law or fact common to the proposed class. Instead, the court must *also* evaluate predominance and decide whether " 'the issues which may be jointly tried, when compared with those requiring separate adjudication, [are] sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants.' " (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913–914 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) A court may properly deny certification where there are diverse factual issues to be resolved even though there may also be many common questions of law. (*Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110, 118 [133 Cal.Rptr.2d 367].)

Here, although plaintiffs' expert (Mr. Gliko) stated the cost to replace each shower pan was calculable through a formula that would permit a classwide aggregate recovery (by using a formula to estimate the average cost to replace the pan multiplied by the total number of class members) and thereby eliminate any need for individual class members to litigate damage estimates, Mr. Gliko admitted his formula assumed that (1) standard grade tile would be

used, (2) the removal of the existing system would extend to the existing framing, (3) "[b]locking, dam, or framing repairs incidental to the installation of the replacement [shower pan] will be performed," and (4) a new shower door would be installed. Moreover, although Mr. Gliko explained the replacement process would "incidentally include repair of some, if not all, of the consequential damage caused by the leaking shower pan . . . [such as] repair of the damage to adjacent drywall and other finishes incidental to the installation of the replacement [pan]," his formula would not include any "estimate for repairing consequential damage."

However, Lasco's evidence showed the *actual* costs of replacement were not amenable to estimation because the costs associated with removing and replacing each individual shower pan could vary widely from one class member to the next. Lasco's expert (Mr. Kuczwara) explained there was a wide variety of construction materials and methods used to install shower pans, as well as a wide variety in the type of finish materials that would be used, and therefore it would be necessary to conduct individualized damage determinations for the costs to replace the pans even if no extensive consequential damage to adjacent components was uncovered and needed repair. Kuczwara explained that a shower pan is unlike other shower assembly components because, after the framing, it is the first component installed in the shower assembly and, after it is attached to the framing, the moisture barrier, the cementitious substrate, and the tile wall are all integrated with the shower pan; accordingly, unlike components like "a showerhead, which can be removed and replaced with relative ease, a shower pan cannot." Kuczwara also explained there were numerous component parts to a shower assembly that must be considered when estimating the cost to replace a shower pan, including the type of moisture barrier (which can be 15-pound felt, Jumbo Tex 20–60 minute paper, Aquabar, or lath covered with scratch coat); the type of substrate system (such as Durock, Hardibacker, or mortar set); the type of floor finishing in the bathroom (such as hardwood flooring, carpeting, linoleum tile, ceramic tile, or stone); the type of shower door; the type of tile used for the shower enclosure (of which there are countless variations); and the type of walls and finishes on the walls outside the shower (including tile, stone, drywall, paint over drywall, or wallpaper over drywall). Kuczwara explained that Gliko's standardized formula "failed to account for these variables" and gave, as one example, that Gliko's formula was based on the "assum[ption] that he will only repair 'standard grade tile,'" which demonstrated Gliko "did not take into account in his estimate the fact that the cost to remove and replace the tile depends on the kind of tile that currently exists in the shower, which varies from shower to shower, for which there are countless possibilities."

 Plaintiffs assert on appeal that it was error for the trial court to deny class certification on this ground because variations in the damages actually

sustained among individual class members is no impediment to a classwide recovery based on estimations of the total injury suffered by the class.[6] However, the cases cited by plaintiffs as permitting damages based on approximations are inapplicable. For example, in *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], the plaintiff sought recovery on behalf of the class for overcharges for cab fares, and the *Daar* court concluded the demurrer was improperly sustained because the allegations of the complaint showed a classwide recovery was possible without the necessity of individual class members proving their separate damage claims because "the exact amount of the overcharge can be ascertained from defendant's books and records . . . ." (*Id.* at pp. 713–714.) Thus, *Daar* approved a classwide recovery in which the amount of liability was known to the defendant and ascertainable from its records. Here, in contrast, there was no evidence Lasco's records contained information that would quantify the amount of the recovery for shower pan removal and replacement.

Plaintiffs also cite *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 [9 Cal.Rptr.3d 544] and *In re Cipro Cases I & II* (2004) 121 Cal.App.4th 402 [17 Cal.Rptr.3d 1] (*Cipro Cases*) to support their argument that, because those cases allowed estimations of damages based on formulas, the trial court

---

[6] Plaintiffs also assert on appeal that, even if the trial court correctly concluded individual class members would be required to show each member's specific cost to replace the shower pans, this complexity cannot defeat class certification. Plaintiffs quote *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1354 [235 Cal.Rptr. 228] as holding the "presence of individual damage issues cannot bar certification," and plaintiffs cite *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at page 339 for the proposition that courts routinely fashion methods to handle individual questions and " 'the trial court has an obligation to consider the use of . . . innovative procedural tools proposed by a party to certify a manageable class.' " Plaintiffs therefore assert, in their reply brief on appeal, the court abused its discretion by declining to certify the class because it could have ordered liability issues bifurcated from damages issues and tried the individual damages issues after liability was established. We are not persuaded by this claim, for several reasons. First, it does not appear plaintiffs raised this argument below, and we decline to consider arguments raised either for the first time on appeal (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249 [100 Cal.Rptr.2d 403]) or, as here, when raised for the first time in the reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].) Indeed, plaintiffs' failure to propose below how the litigation of individualized damages could be handled in a manageable fashion as part of its proposed class action bars plaintiffs' claim that the trial court failed " 'to consider the use of . . . innovative procedural tools *proposed by a party* to certify a manageable class.' " (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* at p. 339, italics added.) Finally, we note that *B.W.I.* is the only California case of which we are aware that has reversed the trial court on the ground that the presence of individual damage issues *cannot* provide grounds to deny certification. Because we are unaware of any California case that subsequently cited *B.W.I.* for that proposition, and that proposition appears contrary to other California cases (see, e.g., *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 813 [50 Cal.Rptr.2d 736]; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1233–1234 [271 Cal.Rptr. 72]), we are not persuaded *B.W.I.* compels reversal here.

here abused its discretion by denying class certification based on the necessity of individualized damage showings. However, *Bell* was a class action in which the Court of Appeal affirmed that portion of a jury verdict based on expert testimony that used statistical methods to calculate unpaid overtime compensation *after* the employees' entitlement to such compensation had already been decided as a matter of law and affirmed by the Court of Appeal; accordingly, only the amount of damages (rather than the fact of each class member's right to recover) remained at issue. *Bell* merely concluded it was within the discretion of the trial court to weigh "the disadvantage of statistical inference—the calculation of average damages imperfectly tailored to the facts of particular employees—with the opportunity it afforded to vindicate an important statutory policy without unduly burdening the courts" (*Bell*, at p. 751), and expressly observed that " '[o]ur review of a trial court's plan for proceeding in a complex case *is a deferential one* that recognizes the fact that the trial judge is in a much better position than an appellate court to formulate an appropriate methodology for a trial.' " (*Ibid.*, italics added.)

Indeed, the limited import of *Bell* is highlighted by the opinion, filed just weeks after *Bell* by a different panel of the same division of the Court of Appeal (with two of the same members), in *Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29 [10 Cal.Rptr.3d 82]. There, the court affirmed the denial of an order denying class certification where the claims involved class action damages for nuisance from the noise generated by the defendant's quarry. Citing two separate expert reports filed by the defendants showing large variations in "noise exposure" (*id.* at p. 39), *Frieman* held: "In this case, the multiple variations in potential impact (or complete lack of impact) of Quarry's operations discussed in the Salter and Blast Dynamics reports involve differences in establishing Quarry's liability to the proposed class members as well as in the nature of the damages suffered. For example, the residents of a house built on soil, behind a hill or on the waterfront may be completely unaware of the Quarry's activities and suffer no discomfort or annoyance. Neighboring residents in homes built on rock without barriers might suffer varying degrees of annoyance from vibration, noise, dust or other by-products of the Quarry's business. The former residents cannot establish liability for maintaining a public nuisance. The latter have infinite variations in degree of impact." (*Id.* at pp. 41–42, fn. omitted.)

We distill from those cases that, although a trial court has *discretion* to permit a class action to proceed where the damages recoverable by the class must necessarily be based on estimations, the trial court equally has discretion to deny certification when it concludes the fact and extent of each member's injury requires individualized inquiries that defeat predominance. The evidence offered here is similar to the evidence considered in *Frieman* insofar as there is a potentially wide disparity in the amount of damages

recoverable by each class member,[7] and the trial court here (as did the trial court in *Frieman*) exercised its discretion to conclude these individual issues predominated over common issues. We likewise cannot find it was an abuse of discretion to deny certification based on this finding.

For similar reasons, the court's statements in *Cipro Cases* approving the use of a formula to extrapolate damages to the class do not compel reversal here. First, *Cipro Cases* was decided in the context of antitrust litigation, where it has long been recognized that, although the fact of injury must be established with reasonable certainty, a less rigid standard of proof is imposed with respect to the amount of damage caused by an antitrust violation, because economic harm in such actions is difficult to quantify.[8] (See, e.g., *Copper Liquor, Inc. v. Adolph Coors Co.* (5th Cir. 1980) 624 F.2d 575, 580; *Bigelow v. RKO Radio Pictures* (1946) 327 U.S. 251, 264 [90 L.Ed. 652, 66 S.Ct. 574] ["[T]he [fact finder] may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly."].) Because of such difficulty, rather than deny any recovery to those injured by anticompetitive activity because they cannot prove damages with exactitude, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." (*Story Parchment Co. v. Paterson* (1931) 282 U.S. 555, 563 [75 L.Ed. 544, 51 S.Ct. 248].) In contrast, no similar impediment exists to show what damages (if any) would be recoverable by any individual whose shower pan

---

[7] Indeed, this case also parallels *Frieman*, and is not analogous to *Bell* (where the class members' right to recover was established and only damages remained) because, like *Frieman* (and unlike *Bell*), whether any individual class member would be entitled to recover depends not merely on proof the shower pan was defectively designed but also that each individual members' property was *actually* damaged by the defective pan. (See, e.g., *Jiminez v. Superior Court* (2002) 29 Cal.4th 473, 481–485 [127 Cal.Rptr.2d 614, 58 P.3d 450] [no product liability claim absent proof of economic loss arising from property damage other than damage to the defective product].)

[8] Plaintiffs also rely on a series of federal cases purporting to approve the use of approximations of damages to obviate concerns over the necessity of individualized damages showings in a class action. However, most of plaintiffs' federal cases were similarly decided in an antitrust context (see, e.g., *In re Domestic Air Transp. Antitrust Litigation* (N.D.Ga. 1991) 137 F.R.D. 677 [class action under Clayton Act (15 U.S.C. § 12 et seq.) for alleged conspiracy to fix ticket prices]; *Meredith v. Mid-Atlantic Coca Cola Bottling Co., Inc.* (E.D.Va. 1989) 129 F.R.D. 130 [antitrust action against cola bottling companies alleging price-fixing conspiracy]; cf. *In re Texas Intern. Securities Litigation* (W.D.Okla. 1987) 114 F.R.D. 33), and thus provide no guidance here. The other federal decisions relied on by plaintiffs, although decided in a mass tort context (see, e.g., *In re Estate of Marcos Human Rights Litigation* (D. Hawaii 1995) 910 F.Supp. 1460 and *In re Agent Orange Product Liability Litigation* (E.D.N.Y. 1984) 597 F.Supp. 740), did not address the foundational issues of whether to certify the class based on approximations of damages. Instead, those cases assumed the class had been properly certified and addressed only whether to approve a settlement (as in the *Agent Orange* litigation) or whether a damage award based on sampling violated the defendant's due process or jury trial rights under the federal Constitution (as in the *Marcos* case).

leaked, which renders the *Cipro Cases* court's approval of approximations inapposite to plaintiffs' action here.[9]

Moreover, the court in *Cipro Cases* did *not* hold a trial court abuses its discretion when it declines to certify a class on the grounds that individual showings of damages predominate over common issues merely because the class proponent offered a formula to calculate classwide damages, which formula the trial court rejected. To the contrary, the *Cipro Cases* court *upheld* the trial court's discretionary determination because it recognized "[t]he trial court is in the best position to weigh the advantages of class treatment against its disadvantages" (*Cipro Cases, supra*, 121 Cal.App.4th at p. 416), and specifically stated it was not an abuse of discretion to adopt a formula to calculate damages in that case because it was "within the trial court's discretion to weigh the inherent imperfections of such approximations against the vindication of important statutory policies and the burden to the courts of proving damages on a strictly individual basis." (*Id.* at p. 418.) Because the decision of whether to accept statistical evidence in these circumstances is discretionary for the trial court (*Bell v. Farmers Ins. Exchange, supra*, 115 Cal.App.4th at p. 751), we will not reverse that discretionary determination merely because plaintiffs disagree with the trial court's resolution.

### Inadequacy of Class Representative

■ The court alternatively appeared to agree with Lasco's argument that plaintiffs, by limiting the recovery to the cost of replacing the shower pans, were not adequate class representatives because that recovery would forfeit additional recoveries (e.g., to consequential damages to other component parts of the house) that class members might otherwise be entitled to recover. A proposed representative must adequately represent the class, and a trial court may conclude that requirement is not met if the class member "fail[s] to raise claims reasonably expected to be raised by the members of the class." (*San Jose, supra*, 12 Cal.3d at p. 464.) In *San Jose*, the proposed representatives were found inadequate representatives for the class because the class action sought (for themselves and all other real property owners situated in the flight path of the city airport) the diminution of the market value of that property caused by aircraft noise, vibration, etc., based on theories of nuisance and inverse condemnation. (*Id.* at pp. 452–453.) The court, noting a successful nuisance action for injury to real property could include not merely diminution of market value but also could encompass damages for annoyance, inconvenience and discomfort, observed that seeking only one form of

---

[9] Indeed, the *only* reason proving damages with exactitude presents difficulty in this case is that it would prove unwieldy in a class action setting to prove each member's right to recovery and the amount. However, that latter factor *supports*, rather than undermines, the determination that individual issues predominated over common issues.

damages would be waiving on behalf of all other class members recovery of damages in other forms, and therefore it was error to certify the class. (*Id.* at p. 464.)

Plaintiffs do not dispute a class member *would* forfeit such recovery if he or she remained a member of the class. Instead, plaintiffs assert the trial court erred when it concluded the possible methods for protecting against forfeiture of additional recoveries (including creating subclasses or permitting potential class members to opt out if they wished to preserve their additional recoveries) were not feasible or practical under the circumstances presented in this case. Plaintiffs assert the class should have been certified as to the remedy sought (i.e., damages limited to the costs to replace the shower pan), and problems with adequacy of representation would be solved by advising prospective class members (in the class notice) that the recovery would be limited and providing the class members the opportunity to preserve their additional claims by opting out of the class.[10]

We are convinced the trial court acted within its discretion to the extent it denied class certification based on plaintiffs' failure to raise those claims reasonably expected to be raised by members of the class. Plaintiffs' proposed class action, although proceeding on both strict liability and negligence claims, expressly waived any recovery beyond the average cost to replace the shower pans, thereby forfeiting recovery of damages to other parts

---

[10] Plaintiffs argue this procedure was the basis for the court's decision in *Anthony v. General Motors Corp.* (1973) 33 Cal.App.3d 699 [109 Cal.Rptr. 254]. However, plaintiffs' reliance on *Anthony* appears misplaced. In *Anthony*, the plaintiffs sued for breach of warranty based on the allegation that certain automobile wheels were defective, and sought replacement costs. The defendant asserted the plaintiffs were not members of the class they purported to represent, and therefore lacked standing to sue on behalf of the class, because the plaintiffs did not allege they personally sustained any personal injury or any physical property damage. (*Id.* at p. 704.) The court rejected that argument because the gravamen of the plaintiffs' case was the contention that *all* wheels of the type involved were inherently defective, which may cause them to fail at some time, and prayed for replacement. *Anthony* explained that the "fallacy of defendant's argument lies in its assumption that plaintiffs seek, in this action, to recover for all kinds of damage that might, heretofore or hereafter, flow from actual failure of the wheels. Admittedly, a suit seeking that broad kind of recovery would require . . . the determination of a variety of issues—assumption of risk, negligent maintenance and driving, overloading, among others. . . . [T]hose are matters for the trial court to consider in delimiting the class and in framing its notice and further orders. If, on remand, the trial court feels that the pleadings before it would involve too many individual sub-trials, the proper action is to require plaintiffs to eliminate such claims from their requested relief and to see that potential members of the plaintiff class are advised of such limitations; dismissal of the action as a whole, on that ground is, on the record before us, neither necessary nor proper. If, however, as we read the record, plaintiffs are correct that *all* of the wheels are inherently suspect, the recovery expressly sought herein will not turn on the conduct of any individual purchaser." (*Id.* at p. 705.) Thus, *Anthony held* dismissal of a class action pleading breach of warranty claim was improper in that case, and any comments made by the *Anthony* court about how to handle those class members entitled to pursue additional recoveries were mere dicta.

of the house. Although plaintiffs are correct that class actions may be maintained with regard to particular issues and if necessary a class action may be subdivided into subclasses and each subclass treated as a class (as in *Hicks, supra*, 89 Cal.App.4th at p. 925), or a court may allow class members who wish to raise additional issues to opt out of the class action (as in *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1088–1089 [16 Cal.Rptr.3d 25]), whether these devices are sufficient or appropriate measures in any given action is a matter for the trial court to decide. In this case, the trial court could reasonably determine the interests of the class members were potentially diverse, an insufficient community of interest existed and class certification should be denied, which the creation of subclasses or the permitting of "opting out" would not cure under the peculiar facts of this case. For example, although *Hicks* suggested in dicta that a court could use subclasses (*Hicks*, at p. 925), creating subclasses here would merely resurrect all of the individualized issues (i.e., on such issues as comparative negligence of the individual class member, statute of limitations, assumption of the risk and possible cross-claims against third parties) as well as individualized showing of damages, which would splinter the class into thousands of minitrials and largely defeat the benefits of proceeding as a class action. Similarly, although *Hicks* also suggested in dicta that a court could use the class notice procedure to permit potential members seeking additional recoveries to opt out, the trial court noted the *Hicks* solution "is not feasible under the circumstances of this case."

The facts of *Hicks* apparently involved easily identifiable determinations by individual class members whether the defective foundation had created additional damages "(e.g., uneven floors, insect infestation, misaligned doors and windows) and that such damage was caused by cracks in the foundation" (*Hicks, supra*, 89 Cal.App.4th at p. 924), but the trial court in this action observed that was "not the situation here." There is substantial evidence to support this conclusion. Lasco contended, and plaintiffs did not dispute, that a class member could not determine whether he or she had suffered such additional damages. Accordingly, even if the class notice provided a potential member with sufficient information on the reasons he or she might wish to opt out of the class (e.g., to preserve a claim for additional damages), the class member here (unlike potential class members in *Hicks*) could not readily decide whether to opt out of the class but could only make that decision after engaging in destructive testing. The trial court had substantial evidence to conclude the solutions suggested in the *Hicks* and *Anthony* dicta were infeasible under the facts presented in this case.

### *"Liability Only" Certification*

Plaintiffs finally argue the court abused its discretion by declining to certify the class solely as to the common issues of liability and causation, which

would then permit individual members to seek damages in the event plaintiffs prevailed on the liability questions tried in the class action. Plaintiffs argue the court could have "resol[ved] the central question of whether Lasco's shower pans are defective and have caused damage, and thereafter allow[ed] class members to prove their individual monetary damages in the event [plaintiffs] prevailed on the liability issue at trial." Although plaintiffs alluded to that possibility in their attorney's declaration below, and cited the dicta in *Hicks* to support that approach, the trial court (after noting even plaintiffs did not recommend that approach) recognized *Hicks* alluded to that approach in the context of a class action pursuing a breach of warranty claim and the trial court here rejected it because "plaintiffs herein do not sue for breach of warranty; and the Court does not see how this 'liability only' approach could be implemented in this case."

On appeal, plaintiffs argue the *Hicks* approach was feasible here. Plaintiffs note *Hicks* stated that "if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages" (*Hicks, supra*, 89 Cal.App.4th at p. 916), and that because the plaintiffs in *Hicks* could prove their breach of warranty claim through a common set of facts, the class should have been certified as to the breach of warranty claim. (*Id.* at p. 923.) From this language, plaintiffs argue Lasco's liability could be shown through a common set of facts, thereafter leaving to the individual class members their individual proofs of damages. However, plaintiffs ignore that the *Hicks* court, although it reversed the trial court's denial of certification of the class action insofar as it sought to pursue claims for breach of express and implied warranties, *affirmed* the trial court's denial of certification of the class action insofar as it sought to pursue claims for strict liability and negligence, stating: "It is well-settled strict liability and negligence do not provide a remedy for defects which have not caused property damage, i.e., defects causing only economic damage. Accordingly, to recover under these theories of liability each class member would have to come forward and *prove specific damage to her home* (e.g., uneven floors, insect infestation, misaligned doors and windows), *and that such damage was caused by cracks in the foundation, not some other agent.* [¶] Given this need for individualized proof, commonality of facts is lost and the action splits into more pieces than the allegedly defective foundations." (*Id.* at pp. 923–924, italics added, fn. omitted.)

Here, the precise causes of action *Hicks* held were properly *rejected* as amenable to resolution in a class setting are the *only* causes of action being pursued by plaintiffs. Indeed, the emphasized language undermines plaintiffs' claim that a "liability only" class action would be feasible here, because there would be no liability established on the pleaded claims as to any class member here unless and until each class member individually proved (1) specific damage to his or her home and (2) such damage was caused by

the design of the pan rather than some other cause. We conclude the trial court correctly concluded a "liability only" approach could be not be implemented in this action.

## DISPOSITION

The order is affirmed. Defendants are entitled to costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.