Filed 7/30/13  Koponen v. P G & E CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRIAN L. KOPONEN et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>     Defendant and Respondent;<br><br>CALIFORNIA CABLE AND TELECOMMUNICATIONS ASSOCIATION,<br><br>     Intervener and Respondent. | A133174<br><br>(San Francisco City & County Super. Ct. No. CGC-06-454198) |

Plaintiffs Brian Koponen and The Edith A. Hayes Trust (the Hayes Trust) sued, on behalf of themselves and a putative class of others similarly situated, defendant Pacific Gas & Electric Company (PG&E), a public utility.  Plaintiffs own properties on which PG&E has utility easements creating rights of way.  Plaintiffs allege PG&E, without their consent, trespassed on their properties by installing fiber-optic lines along its utility easements and leasing or licensing rights in the fiber-optic lines to telecommunications and Internet companies.  Plaintiffs sought certification of their suit as a class action.  The trial court denied certification, ruling that individual questions predominate, and thus the

1

matter is not suitable for class litigation.  Plaintiffs contend the ruling was in error.  We disagree and affirm.[1]

## I.  PROCEDURAL BACKGROUND & FACTS

This litigation has been previously before us.  (*Koponen v. Pacific Gas & Electric Co.* (2008) 165 Cal.App.4th 345 (*Koponen I*).)  We quote our prior opinion to provide the background of this litigation.

"According to plaintiffs' allegations, PG&E, by condemnation or private agreement, obtained easements creating rights-of-way over plaintiffs' properties for the purposes of furnishing and supplying electricity, light, heat and power to the public.  Plaintiffs allege that at some time after 1990, PG&E began installing fiber-optic telecommunications lines and wireless telecommunications equipment in the corridors subject to the easements.  PG&E later began leasing or licensing fiber-optic capacity and telecommunications services to third parties, including leading telecommunications and Internet companies.  Plaintiffs claim by leasing or licensing its facilities to telecommunications providers, PG&E exceeded the scope of the easements granted or conveyed to it . . . ."  (*Koponen I, supra,* 165 Cal.App.4th at pp. 348–349.)

Plaintiffs allege PG&E obtained the Koponen easement in 1926 by condemnation, and obtained the Hayes Trust easement in 1921 by agreement.  By 2003 with respect to the Koponen easement, and by 1998 with respect to the Hayes Trust easement, PG&E had installed a "shield wire" at the highest point of its electric transmission towers such that it crossed through the easements.  Shield wire is 5/8 inches thick and has fiber-optic cable imbedded in its core.  In addition to its fiber-optic transmissions, shield wire is used to protect the wires beneath it on the transmission towers from lightning strikes.

Plaintiffs filed their initial complaint in 2006.  PG&E demurred to the complaint on three grounds, including the court's alleged lack of jurisdiction under Public Utilities Code section 1759 in favor of the Public Utilities Commission, and the unsuitability of

---

[1] The trial court granted the California Cable and Telecommunications Association (CCTA) leave to intervene in the action below.  CCTA has filed a brief in this court on behalf of PG&E's position.

class adjudication. (*Koponen I, supra,* 165 Cal.App.4th at pp. 348–350.) The trial court sustained the demurrer without leave to amend on the jurisdictional ground, and did not reach the other two grounds including class unsuitability. (*Id.* at p. 348.) We reversed and held plaintiffs could maintain certain causes of action, including one seeking damages for invasion of their property rights, i.e., trespass. (*Id.* at pp. 356–359.)

Subsequent to our decision in *Koponen I,* plaintiffs filed a first amended complaint whose gravamen is trespass on their property rights. Plaintiffs repeated their allegations that the easements were for the purposes of transmitting electricity, light, heat, and power, and PG&E exceeded the scope of the easements by installing and leasing the fiber-optic cable without the owners' consent, amounting to trespasses on their properties. Plaintiffs seek damages for the physical intrusion, including the alleged diminishing of their property values.

Plaintiffs moved to certify the following class, subject to exclusions not pertinent here: "All persons in California whose property has been subjected to an easement by PG&E . . . to transmit communications other than PG&E's electricity-related internal communications without the express right to do so."

The trial court denied the motion to certify in a lengthy and well-reasoned ruling. The court based its denial on three separate grounds: (1) the easements must be interpreted on an individual basis to determine their scope and other issues regarding liability; (2) trespass damages must be determined on an individual, property-specific basis; and (3) plaintiffs had failed to show the superiority of class adjudication. We will discuss the trial court's ruling in more detail below.

## II. DISCUSSION

We review the denial of a motion for class certification for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326−327 (*Sav-On Drug Stores*).) Generally, an order granting or denying certification will not be disturbed on appeal unless it is not supported by substantial evidence, it rests on improper criteria, or it rests on erroneous legal assumptions. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*).)

3

The prerequisites for a class action are well-known: "the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.]" (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 (*Richmond*).) In addition, there must be a showing that class adjudication is superior to other methods of resolving the dispute. (*Fireside Bank, supra,* 40 Cal.4th at p. 1089.) The community of interest requirement "embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Richmond, supra,* at p. 470; see *Sav-On Drug Stores, supra,* 34 Cal.4th at p. 326.)

The proponent of class action certification bears the burden of showing the propriety of class adjudication. This burden includes a proper showing of predominance of common questions of law and fact. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 922.) The class action proponent must present substantial evidence that such common issues predominate. "[T]his means 'each [class] member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants.' [Citation.]" (*Id.* at pp. 913–914.)

The trial court found the present case is inappropriate for a class action because common questions of fact and law do not predominate. "[A] class action cannot be maintained if each individual's right to recovery depends on facts peculiar to that individual. [Citation.]" (*Kennedy* v. *Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 809.)

**Liability**

The core question in the present case, as the trial court found and plaintiffs conceded below, is the interpretation of the easements to determine whether PG&E exceeded their scope by using them to provide telecommunications services. The trial court noted several legal principles defining the interpretation of easements. A court

4

determining the scope of an easement uses the same interpretive rules that apply to the construction of contracts. (*Kerr Land & Timber Co. v. Emmerson* (1965) 233 Cal.App.2d 200, 219.) An instrument conveying an easement must be construed by a consideration of its own terms, unless the instrument is ambiguous. (*Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245.) If there is ambiguity in the conveyance of an express easement, a court "may look to surrounding circumstances and the relationship of the parties and the properties involved . . ." and must "give effect to the mutual intent of the parties. [Citation.]" (*Christian v. Flora* (2008) 164 Cal.App.4th 539, 550.)

In light of these principles, the trial court concluded the interpretation of the PG&E easements "would require highly individualized inquiries including, but not limited to, the following: (1) what specific language appears in each easement; (2) when was each easement granted or conveyed; (3) what were the circumstances surrounding the grant or conveyance of each easement; (4) what was the intended scope of each easement; (5) what, if any, oral or written modifications were made to each easement; and (6) what, if any, additional communications occurred between the parties to each easement."

The trial court noted plaintiffs had provided samples of easements showing they were drafted "at different time periods, some of them dating back almost a hundred years." Plaintiffs acknowledged below "that the facts and circumstances that existed at the time that the granting language was originally drafted would establish the intended scope of the easements." Plaintiffs agree with that principle in their opening brief on appeal. The trial court concluded "the facts and circumstances that existed at the time each easement was drafted is going to vary dramatically from one case to the next, or at least involve disparate and different circumstances."

The trial court rejected plaintiffs' contention that individualized review would be obviated by the court's review of samples of easements from three categories of easements defined by plaintiffs. The trial court noted the first group contained easements silent with respect to communications wires, while the second group contained some easements not necessarily limited to communication uses pertinent to transmission of

electricity. "[T]he interpretation of those easements would give rise to a myriad of individualized factual inquiries."

The trial court noted the evidence was disputed whether PG&E gave notice to, and obtained consent from, individual property owners for the use of their easements for telecommunications purposes. "One would have to examine the individual circumstances of each purported class member to determine whether he or she received notice from PG&E and whether he or she expressly or impliedly authorized PG&E to use the easements for telecommunications purposes."

The court further noted PG&E and CCTA had submitted "persuasive evidence" indicating the process by which PG&E acquired the easements "was done on an individual basis." Easements were negotiated at arm's length on an individual or case-by-case basis, and sometimes there were revisions of particular easement language or side agreements. "This [c]ourt concludes that the individual procurement of each easement pursuant to [arm's] length negotiations raises a myriad of individualized issues regarding the mutual intent of the parties as to the scope of each easement."

"In short, this [c]ourt concludes that common questions do not predominate over individual questions with respect to issues on liability. That conclusion alone is sufficient to support the ultimate conclusion reached by this [c]ourt that this motion for class certification should be denied. In other words, what has been said up to this point constitutes an independently sufficient basis on which this [c]ourt denied class certification."

There is no question this conclusion is based on proper legal criteria. It is supported by substantial evidence. A sampling of the easements provided by CCTA in its respondent's brief markedly demonstrates the variation in form and wording among the easements. For instance, some are one page long and include only terse language granting rights, while others are nine or more pages long and describe the rights granted in considerable detail. Some are form easements with typed-in details while others appear to be original documents. Some are formal condemnation documents.

The varied language regarding the precise purposes for which PG&E may use the easements is striking. Various easements grant PG&E rights for "electric transmission"; electrical transmission "and for all purposes connected therewith"; wires "for telephone and telegraph purposes in connection with [electricity] transmission and distribution"; use of telephone lines "in connection with [PG&E's] business"; electrical transmission lines and "private" telephone lines; "telephone and telegraph wires" or lines "for communications purposes" with no "private" limitation; construction of facilities such as "wires," "cables," "fixtures," and "appurtenances"; use of wires "for the distribution of electric energy and for communication purposes"; and "a tower line for the transmission of electric energy."

It is patently obvious that the range of differences in wording and form will require individualized interpretive analyses. The trial court correctly concluded common issues do not predominate with regard to the interpretation of the easements.

Plaintiffs observe that, before the deregulation of 1996, PG&E could not engage in the business of general telecommunications. Since most of the easements were obtained prior to that time, plaintiffs contend, in essence, that as a matter of law the easements did not permit PG&E to engage in telecommunications business activities. Thus, they contend, individual questions are not pertinent to a determination that telecommunications uses are beyond the scope of the easements as a matter of law. Plaintiffs miss the point. PG&E is not engaging in the telecommunications business—it is allowing third parties to use its easements to engage in that business, in the same fashion PG&E legitimately allows cable companies to use its utility poles. (See, e.g., *Salvaty v. Falcon Cable Television* (1985) 165 Cal.App.3d 798, 804–805.)

Plaintiffs also argue the granting language in the various easements is unambiguous and there are "no material linguistic differences" between the granting language of the easements. As the above discussion indicates, this is simply not correct.[2]

---

[2] Plaintiffs also contend the issues of notice to and consent of the property owner are not pertinent and do not warrant individualized inquiries. This argument overlooks the trial court's factual findings. Plaintiffs also discuss a minor evidentiary ruling of the

7

**Damages**

The issue of liability alone precludes class certification. Nevertheless, we will briefly discuss the question of damages.

" '[A] class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages.' [Citation.]" (*Sav-On Drug Stores, supra,* 34 Cal.4th at p. 333.) But a trial court has discretion to deny class certification "when it concludes the fact and extent of each member's injury requires individualized inquiries that defeat predominance." (*Evans v. Lasco Bathware, Inc.* (2009) 178 Cal.App.4th 1417, 1430.)

The trial court found the individualized questions regarding damages prevent common damage issues from predominating. "Insofar as plaintiffs seek compensatory damages based on the diminution of the market value of each property or the value of the use of each property, those measures of damages would require individualized inquiries regarding, among other factors, (1) the character, use, and geographic location of the property, (2) the location of the easement on the property, and (3) the time period during which the property was subject to the alleged wrongful trespass." The court dismissed as conclusory, unpersuasive and lacking in foundation the declaration of Barry Diskin, advanced by plaintiffs in an attempt to show damages can be determined by common proof.

There is no question this conclusion is based on proper legal criteria. In arguing to the contrary, plaintiffs rely on the oft-stated rule that "if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. [Fn. omitted]." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916.) That rule does not apply here because its necessary condition, commonality of facts showing liability, has not been met.

---

trial court. The trial court stated the ruling was irrelevant to its decision to deny class certification.

8

The trial court's conclusion is also supported by substantial evidence. PG&E presented evidence that damages would have to be assessed by property-specific appraisals, because no two properties are identical and property values are affected by numerous specific factors. Plaintiffs presented the declaration of Barry Diskin, which the trial court rejected for the reasons stated above. Plaintiffs simply complain about the trial court's determination of conflicting evidence. They cannot overcome the substantial evidence rule.[3]

We agree with the trial court's conclusion: "common questions do not predominate over individual questions with respect to both liability and damages. Since plaintiffs have not met their burden of demonstrating predominance, they have failed to demonstrate a well-defined community of interest among class members. . . . [T]he predominance of individual questions is determinative and constitutes an independently sufficient basis on which this [c]ourt denies class certification."

The evidence properly before the trial court clearly shows that individual questions of proof predominate. Thus, the trial court did not abuse its discretion by denying class certification. In light of this conclusion, we need not discuss the trial court's final conclusion that class adjudication is not the superior method for the resolution of this lawsuit.

---

[3] We need not discuss plaintiffs' remaining arguments regarding damages.

## III.  DISPOSITION

The order denying class certification is affirmed.

———————————————
Sepulveda, J.*

We concur:

———————————————
Margulies, Acting P.J.

———————————————
Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.